ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
LUKE O. BROOKS (212802)
JONAH H. GOLDSTEIN (193777)
ANGEL P. LAU (286196)
CHRISTOPHER D. STEWART (270448)
ANDREW W. HUTTON (172033)
ERIKA OLIVER (306614)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
lukeb@rgrdlaw.com
jonahg@rgrdlaw.com
alau@rgrdlaw.com
cstewart@rgrdlaw.com
dhutton@rgrdlaw.com
eoliver@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MCKESSON CORPORATION, et al., )<br><br>Defendants. ) | Case No. 3:18-cv-06525-CRB<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION<br><br>Date: March 26, 2021<br>Time: 10:00 a.m.<br>Courtroom 6, 17th Floor |

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Please take notice that on March 26, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Court, lead plaintiff Pension Trust Fund for Operating Engineers ("Plaintiff" or "Operating Engineers") will bring for hearing this motion for class certification before the Honorable Charles R. Breyer, Courtroom 6, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102.

As set forth in the attached memorandum, the Court should grant this Motion in its entirety and certify the Class as defined on page 1 of the attached memorandum pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), appoint Operating Engineers as class representative, and appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as class counsel pursuant to Rule 23(g).  The Class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Class that predominate over any questions affecting individual members; Plaintiff's claims are typical of the claims of the Class; Plaintiff and Robbins Geller will fairly and adequately protect the interests of the Class; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Plaintiff asserts a claim against Defendants under §10(b) of the Securities Exchange Act ("Exchange Act") (15 U.S.C. §78j(b)), the elements of which are: "'(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013) (citation omitted).  Supreme Court precedent is clear that falsity, scienter, materiality and loss causation are susceptible to common proof.  *Id.* at 475; *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*").  The element of reliance is susceptible to common proof as well because Plaintiff and the Class are entitled to a presumption of reliance under the fraud-on-the-market theory, as McKesson Corporation common stock traded in an efficient market during the Class Period.  *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  Plaintiff also asserts a claim against Defendants under §20(a) of the Exchange Act (15 U.S.C. §78t(a)) and against John H. Hammergren under §20A of the

1   Exchange Act (15 U.S.C. §78t-1), which are susceptible to class treatment as well because they

2   are derivative of the §10(b) claim and are comprised of common questions. *Hayes v. MagnaChip*

3   *Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016); *SEB Inv. Mgmt. AB v.*

4   *Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020).  Finally, §10(b) and §20A damages

5   are calculable by common methodologies. *See Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150,

6   1155 (9th Cir. 2016); *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

7           This Motion is based on this Notice of Motion and Motion, the accompanying

8   Memorandum of Points and Authorities, the Declarations of Spencer A. Burkholz and Michael M.

9   McCall, the Report of Professor Steven P. Feinstein, the pleadings on file in this action, and upon

10  such other matters as may be properly presented to the Court at the time of or after the hearing on

11  this matter.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.   FACTUAL BACKGROUND ...........................................................................................2

III.  THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS
      CERTIFICATION UNDER RULE 23 .............................................................................3

      A.   Plaintiff Satisfies Rule 23(a) ...........................................................................3

           1.   The Proposed Class Is Numerous .........................................................4

           2.   Plaintiff Raises Common Questions of Law and Fact ............................4

           3.   Plaintiff's Claims Are Typical of the Class's Claims .............................5

           4.   Plaintiff and Counsel Are Adequate Class Representatives ....................6

      B.   Plaintiff Satisfies Rule 23(b)(3) .......................................................................7

           1.   Common Questions of Law and Fact Predominate ...............................7

                a.   All Class Members Are Presumed to Have Relied upon
                     Defendants' Misleading Statements and Omissions.......................9

                     (1)   McKesson's NYSE Listing Is Strong Evidence of
                           Market Efficiency ...............................................................10

                     (2)   The *Cammer* Factors Establish McKesson Common
                           Stock Traded in an Efficient Market...................................10

                b.   Damages Will Be Calculated in the Same Manner for All
                     Class Members................................................................................13

           2.   Class Treatment Is Superior to Other Methods of Adjudication .............13

      C.   Robbins Geller Should Be Appointed Class Counsel...........................................14

IV.   CONCLUSION.................................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

**CASES**

5

*Amchem Prods. v. Windsor,*
6
   521 U.S. 591 (1997)....................................................................................7, 8

7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
8
   568 U.S. 455 (2013).................................................................................. *passim*

*Angley v. UTi Worldwide Inc.,*
9
   311 F. Supp. 3d 1117 (C.D. Cal. Apr. 19, 2018) .....................................12

10

*Basic Inc. v. Levinson,*
11
   485 U.S. 224 (1988)................................................................................. *passim*

12

*Bebault v. DMG Mori USA, Inc.,*
   2020 WL 2065646 (N.D. Cal. Apr. 29, 2020) .........................................14

13

*Billhofer v. Flamel Techs., S.A.,*
14
   281 F.R.D. 150 (S.D.N.Y. 2012) ..............................................................7

15

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ..............................................................3, 5
16

17

*Cammer v. Bloom,*
   711 F. Supp. 1264 (D.N.J. 1989) ...................................................10, 11, 12

18

*City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.,*
19
   2018 WL 4931543 (N.D. Cal. Oct. 11, 2018)........................................13

20

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.,*
   660 F.3d 1170 (9th Cir. 2011), aff'd, 568 U.S. 455....................................3, 9
21

22

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011)................................................................................2, 8

23

*Halliburton Co. v. Erica P. John Fund, Inc.,*
24
   537 U.S. 258 (2014)................................................................................2, 9

25

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................6
26

27

*Hatamian v. Advanced Micro Devices, Inc.,*
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)....................................4, 5, 9, 14

28

1

2                                                                                          **Page**

3

*Hayes v. MagnaChip Semiconductor Corp.*,
4      2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ............................................................ *passim*

5
*Huberman v. Tag-It Pac. Inc.*,
6      314 F. App'x 59 (9th Cir. 2009) ..........................................................................10

7
*In re Diamond Foods, Inc.*,
       295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................ *passim*
8
*In re Providian Fin. Corp. Sec. Litig.*,
9      2004 WL 5684494 (N.D. Cal. Jan. 15, 2004) ........................................................7

10
*In re Twitter Inc. Sec. Litig.*,
11     326 F.R.D. 619 (N.D. Cal. 2018) .........................................................................3, 5

12
*In re VeriSign, Inc. Sec. Litig.*,
       2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ........................................................4
13
*Krogman v. Sterritt*,
14     202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................11

15  *Local 703, I.B. of T. Grocery & Food Emps.*
       *Welfare Fund v. Regions Fin. Corp.*,
16     762 F.3d 1248 (11th Cir. 2014) ...........................................................................7

17
*Loritz v. Exide Techs.*,
18     2015 WL 6790247 (C.D. Cal. July 21, 2015) .......................................................10

19
*Luna v. Marvell Tech. Grp., Ltd.*,
       2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ....................................................5, 13
20
*Nguyen v. Radient Pharms. Corp.*,
21     287 F.R.D. 563 (C.D. Cal. 2012) ......................................................................11, 14

22  *Parsons v. Ryan*,
       754 F.3d 657 (9th Cir. 2014) .........................................................................1, 4, 5
23
*SEB Inv. Mgmt. AB v. Symantec Corp.*,
24     335 F.R.D. 276 (N.D. Cal. 2020) ........................................................................ *passim*

25
*Vaquero v. Ashley Furniture Indus.*,
26     824 F.3d 1150 (9th Cir. 2016) ..........................................................................3, 13

27

28

**Page**

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017),
*cert. denied*, __ U.S. __, 138 S. Ct. 1702 (2018)............................................................9, 10, 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)......................................................................................................................1

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ...................................................................................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77z-1...................................................................................................................................14
§78j(b)..............................................................................................................................*passim*
§78t(a)...................................................................................................................2, 3, 4, 8
§78t-1...................................................................................................................2, 3, 8, 13

Fedederal Rules of Civil Procedure
Rule 23(a)........................................................................................................................*passim*
Rule 23(a)(1)............................................................................................................................4
Rule 23(a)(2)............................................................................................................................4
Rule 23(a)(3)............................................................................................................................5
Rule 23(a)(4)........................................................................................................................6, 7
Rule 23(b)...........................................................................................................................3, 7
Rule 23(b)(3)......................................................................................................................*passim*
Rule 23(g)..........................................................................................................................2, 15
Rule 23(g)(1)...................................................................................................................14, 15

17 C.F.R.
§240.10b-5..............................................................................................................................9
§239.13..................................................................................................................................12

1   I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

2          Plaintiff moves for certification of a class consisting of all persons and entities who

3   purchased or otherwise acquired the common stock of McKesson Corporation ("McKesson" or

4   the "Company") during the period from October 24, 2013 through November 3, 2016, inclusive

5   (the "Class Period"), and were damaged thereby.[1]  This action is paradigmatic of a case susceptible

6   to class treatment, and Plaintiff's Motion should be granted.

7          Plaintiff more than adequately satisfies its burden of establishing that Federal Rule of Civil

8   Procedure 23(a)'s requirements of numerosity, commonality, adequacy and typicality and Rule

9   23(b)(3)'s requirements of predominance and superiority are satisfied.   As explained below, the

10  proposed Class is so numerous and geographically dispersed that joinder is impracticable; Plaintiff

11  alleges claims that are identical to – and thus typical of – the claims of the Class; Plaintiff is a more

12  than adequate class representative; and class treatment is superior to the alternative of innumerable

13  individual lawsuits adjudicating identical issues.

14         The proposed Class also plainly satisfies the commonality and predominance requirements,

15  which simply require Plaintiff to establish that there are ***questions*** that are susceptible to Class-

16  wide resolution and predominate over issues affecting individual Class members, not that those

17  questions "will be ***answered***, on the merits, in favor of the class."[2]  *Amgen Inc. v. Conn. Ret. Plans*

18  *& Tr. Funds*, 568 U.S. 455, 459 (2013).   Here, the seminal questions of law and fact – such as

19  whether Defendants publicly misstated and/or omitted material facts – are clearly common to the

20  Class because the determination of their "'truth or falsity will resolve an issue that is central to the

21  validity of each one of the claims in one stroke.'"  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir.

22  2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).   And because Plaintiff

23  has demonstrated that McKesson common stock traded in an efficient market during the Class

24

25  [1]   Excluded from the Class are Defendants and their families, the officers and directors of the
    Company, at all relevant times, members of their immediate families and their legal
26  representatives, heirs, successors or assigns, and any entity in which Defendants have or had a
    controlling interest.

27  [2]   Citations are omitted and emphasis is added unless otherwise noted.

28  LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION,
    APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-
    cv-06525-CRB                                                                                    - 1 -
    4831-0858-4656.v1

1   Period, it is entitled to a presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988),

2   and Defendants will not be able to rebut it.   *See Halliburton Co. v. Erica P. John Fund, Inc.*

3   ("*Halliburton II*"), 537 U.S. 258, 270 (2014).   Thus, common questions predominate over any

4   individual questions.

5          Accordingly, Plaintiff respectfully requests that the Court grant this Motion, certify the

6   Class, appoint Plaintiff as class representative and appoint Robbins Geller as class counsel.

7   **II.      FACTUAL BACKGROUND**

8          McKesson is the largest wholesale distributor of prescription drugs in the United States,

9   and its common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol

10  "MCK."   ¶¶25, 41.[3]   The Company and two of its highest ranking former officers – McKesson's

11  former Chief Executive Officer ("CEO") and Chairman John H. Hammergren ("Hammergren")

12  and former Executive Vice President and Chief Financial Officer James Beer ("Beer") – are the

13  defendants in this action.   ¶¶25-27.

14         Plaintiff alleges that Defendants violated §§10(b), 20(a) and 20A of the Securities

15  Exchange Act of 1934 ("Exchange Act") by making a series of materially false and misleading

16  statements and omissions throughout the Class Period that falsely characterized the generic drug

17  market as competitive and falsely attributed skyrocketing generic drug prices that were driving in

18  part McKesson's Class Period profits solely to three sources of legitimate supply constraints.

19  ¶¶135-139, 141-151, 154-157, 162, 164, 169-181.   In particular, throughout the Class Period,

20  Defendants repeatedly credited increasing generics prices to "the FDA backlog" on approving new

21  drug applications, "FDA actions around a particular manufacturer's plan[t] or line," or "an

22  individual manufacturer taking a decision around their own capacity."   ¶63; *see* ¶¶141-142, 145-

23  146, 148, 150, 154-155.   In truth, however, the generics market was not competitive, and the

24  unprecedented price increases were not solely the result of the legitimate supply disruptions

25  defendants repeatedly touted.   Instead, "the reason underlying many of these price increases is

26

27  _____
    [3]   All "¶" and "¶¶" are to the Consolidated Class Action Complaint for Violations of the Federal
    Securities Laws (ECF No. 43) ("Complaint") unless otherwise noted.

28  LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION,
    APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-
    cv-06525-CRB                                                                        - 2 -
    4831-0858-4656.v1

1   much more straightforward, and sinister": widespread collusive activities among drug

2   manufacturers that drove in part McKesson's profits.  ¶35.

3   Ultimately, Defendants' fraud was unsustainable and began to collapse as the government

4   closed in on the widespread collusion.  Certain manufacturers pled guilty, were indicted by the

5   U.S. Department of Justice, or were sued by State Attorneys General.  *E.g.*, ¶¶36-40.  McKesson

6   announced reduced financial results and lower growth going forward that was due to the implosion

7   of collusion-driven generic pricing inflation.  ¶¶160, 196, 199.  McKesson's stock price declined

8   and investors suffered economic damages.  *Id.*

9   **III.   THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS
            CERTIFICATION UNDER RULE 23**

10

11  To certify the Class, Plaintiff must establish that the requirements of Rule 23(a) and at least

12  one subsection of Rule 23(b) are satisfied.  *See Amgen*, 568 U.S. at 459; *In re Twitter Inc. Sec.*

13  *Litig.*, 326 F.R.D. 619, 624 (N.D. Cal. 2018).  As Supreme Court and Ninth Circuit authority make

14  clear, the inquiry at the class certification stage is not concerned with whether the plaintiff will

15  ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met.  *See Conn.*

16  *Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011), *aff'd*, 568 U.S. 455.

17  Accordingly, "[m]erits questions may be considered to the extent – ***but only to the extent*** – that

18  they are relevant to determining whether the Rule 23 prerequisites for class certification are

19  satisfied."  *Amgen*, 568 U.S. at 466; *see Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (the

20  class certification assessment "does not permit or require a preliminary inquiry into the merits").

21  **A.   Plaintiff Satisfies Rule 23(a)**

22  There are four requirements under Rule 23(a) to certify a class: (1) the class must be "so

23  numerous that joinder of all members is impracticable" (numerosity); (2) "questions of law or fact

24  common to the class" must exist (commonality); (3) "the claims or defenses of the representative

25  parties [must be] typical of the claims or defenses of the class" (typicality); and (4) "the

26  representative parties [must] fairly and adequately protect the interests of the class" (adequacy).

27  Fed. R. Civ. P. 23(a).  As described below, Plaintiff satisfies each of these requirements.

28

1

## 1.      The Proposed Class Is Numerous

2       Plaintiff meets Rule 23(a)(1)'s numerosity requirement because the proposed Class is so

3    numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  "While no

4    specific minimum number of potential class members exists, a 'proposed class of at least forty

5    members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro*

6    *Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016).  In assessing this requirement,

7    "'[t]he Court certainly may infer that, when a corporation has millions of shares trading on a

8    national exchange,' the numerosity requirement is met."  *Hayes v. MagnaChip Semiconductor*

9    *Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016); *see In re VeriSign, Inc. Sec. Litig.*,

10   2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005).

11      During the Class Period, McKesson averaged 229.98 million shares of common stock

12   outstanding and an average weekly trading volume of 7.52 million shares.  Ex. B, Report on Market

13   Efficiency by Professor Steven P. Feinstein ("Feinstein Rpt."), ¶¶49, 79.[4]  Moreover, McKesson

14   common stock publicly trades on the NYSE, "one of the most renowned, most liquid, and most

15   efficient forums for trading stocks in the world."  *Id.*, ¶64.  These facts easily establish numerosity.

16   *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity

17   satisfied with "over six-hundred thousand outstanding shares of Symantec common stock during

18   the class period"); *Hayes*, 2016 WL 7406418, at *3 (numerosity satisfied with "'approximately

19   34.1 million to 37.1 million shares'" outstanding).

20

## 2.      Plaintiff Raises Common Questions of Law and Fact

21      Rule 23(a)(2)'s commonality requirement is met where, as here, there are "questions of

22   law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Plaintiff[] need not show . . . that

23   'every question in the case, or even a preponderance of questions, is capable of class wide

24   resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the

25   commonality requirement of Rule 23(a)(2).'"  *Parsons*, 754 F.3d at 675.

26

27   ───────────────

[4]    All "Ex." citations are to exhibits attached to the Declaration of Spencer A. Burkholz, filed concurrently herewith.

28   LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-cv-06525-CRB                                                                                    - 4 -
4831-0858-4656.v1

"The Ninth Circuit recognizes that public disclosures alleged to contain material misrepresentations and omissions, like those at issue here, present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4 (quoting *Blackie*, 524 F.2d at 902).   Here, the Complaint details a common course of conduct arising from materially false and misleading statements and omissions Defendants made to the investing public in McKesson's U.S. Securities and Exchange Commission ("SEC") filings and on conference calls, and the Complaint's allegations concern all Class members.   Accordingly, this action is replete with questions that are common to the Class, including whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of McKesson; whether Defendants knew or were deliberately reckless in not knowing that their statements and omissions were false and misleading; and whether Defendants' conduct caused Class members to sustain damages.   *See* ¶213.   These questions readily demonstrate a common theory of recovery for Plaintiff and the Class; thus, commonality is satisfied.   *See SEB*, 335 F.R.D. at 282-83 ("plaintiff's allegations that investors were defrauded by the same misrepresentations . . . over the same period of time, and suffered similar losses as a result are sufficient to fulfill Rule 23(a)'s commonality requirement"); *Twitter*, 326 F.R.D. at 626 (holding similarly); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *2 (N.D. Cal. Oct. 27, 2017) (holding similarly).

### 3.      Plaintiff's Claims Are Typical of the Class's Claims

Plaintiff satisfies Rule 23(a)(3)'s typicality requirement because Plaintiff's claims are "typical" of the claims of the proposed Class.   Fed. R. Civ. P. 23(a)(3).   "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"   *Parsons*, 754 F.3d at 685.   "'Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"   *Id.*

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-cv-06525-CRB
4831-0858-4656.v1

- 5 -

1        Here, Plaintiff purchased McKesson common stock during the Class Period.  Ex. A, ¶4;

2   ECF No. 30-2 at 4.  As explained above, Plaintiff's claims are founded on the same alleged facts

3   and legal theories as the claims of all Class members, *i.e.*, Defendants' Class Period material

4   misstatements and/or omissions and their impact on the price of McKesson common stock.  *See*

5   *supra*, §III.A.2.  Moreover, the injury Plaintiff suffered is the same injury suffered by the putative

6   Class as a whole.  *See* Feinstein Rpt., ¶¶135-154.  Because "[P]laintiff's claims arose from the

7   same set of events and course of conduct that gave rise to the claims of other class members,"

8   typicality is satisfied.  *SEB*, 335 F.R.D. at 284.

9        **4.**    **Plaintiff and Counsel Are Adequate Class Representatives**

10        Plaintiff's demonstrated ability and continuing willingness to fairly and adequately protect

11   the interests of absent Class members satisfies the adequacy requirement of Rule 23(a)(4).  Fed.

12   R. Civ. P. 23(a)(4).  The adequacy prerequisite is concerned with two questions: "'(1) do the named

13   plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will

14   the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"

15   *SEB*, 335 F.R.D. at 284-85 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

16        Here, there are no fundamental conflicts between Plaintiff and the putative Class.  Rather,

17   Plaintiff's interests are perfectly aligned with the Class's.  Like all Class members, Plaintiff

18   purchased McKesson common stock at inflated market prices during the Class Period and was

19   injured by Defendants' misconduct.  Plaintiff is thus incentivized to establish Defendants' liability

20   and maximize its recovery, and by doing so, Plaintiff will necessarily do the same for the absent

21   Class members.  Further, Plaintiff has demonstrated its willingness and ability to serve as class

22   representative and to monitor and participate in the prosecution of this action through its active

23   participation in the discovery process, review of documents filed with the Court, and consulting

24   with Robbins Geller concerning key events in the litigation.  Ex. A, ¶¶5-8.

25        In addition, Plaintiff is a large pension fund that invests approximately $4.3 billion in

26   retirement assets on behalf of approximately 46,000 participants.  *Id.*, ¶3.  Its status as an

27   institutional investor further supports a finding of adequacy because "both Congress and the courts

28

1    have recognized that [large institutional] investors are generally preferred as class representatives

2    in securities litigation." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions*

3    *Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014); *In re Providian Fin. Corp. Sec. Litig.*, 2004 WL

4    5684494, at *3-*4 (N.D. Cal. Jan. 15, 2004) (Breyer, J.).

5         Plaintiff has also retained attorneys who satisfy this adequacy requirement.  *See* Ex. C.  As

6    many courts have recognized, Robbins Geller is "'one of the most successful law firms in securities

7    class actions, if not the preeminent one, in the country.'"  *Billhofer v. Flamel Techs., S.A.*, 281

8    F.R.D. 150, 158 (S.D.N.Y. 2012).   In the first few months of 2020 alone, Robbins Geller has

9    recovered more than $2.5 billion on behalf of investors in securities class action cases, including $1.02

10   billion in *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y. Jan. 21,

11   2020), $1.21 billion in *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG

12   (D.N.J.) (pending final approval), and $350 million in *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555-

13   DGC (D. Ariz. June 30, 2020).  As its actions in this case and others demonstrate, Plaintiff's chosen

14   counsel have committed, and are willing to commit, considerable resources to prosecuting this

15   action, and have vigorously represented the Class's interests in this action to date.

16        In sum, Plaintiff and its chosen counsel will more than "fairly and adequately protect the

17   interests of the class." Fed. R. Civ. P. 23(a)(4).

18   **B.     Plaintiff Satisfies Rule 23(b)(3)**

19        In addition to Rule 23(a), a plaintiff seeking class certification must also satisfy at least one

20   subsection of Rule 23(b).  *See Amgen*, 568 U.S. at 459.  Here, Plaintiff seeks to certify the Class

21   pursuant to Rule 23(b)(3), under which certification is appropriate where common questions of

22   law or fact predominate over individual questions, and the class action is superior to other available

23   means of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  These two requirements are easily met.

24   **1.     Common Questions of Law and Fact Predominate**

25        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

26   cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591,

27   623 (1997).  This inquiry is satisfied where "***questions*** of law or fact common to the class will

28

'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen*, 568 U.S. at 467 (emphasis in original). It does ***not*** permit inquiry into whether those common questions "will be answered, on the merits, in favor of the class." *Id.* at 459. Accordingly, while the inquiry "begins . . . with the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*"), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," *Amgen*, 568 U.S. at 466.

As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. This securities fraud action is no different. Once the common questions are resolved, little will remain other than the mechanical act of computing the amount of damages suffered by each Class member. Accordingly, common questions of law and fact predominate.

Plaintiff seeks certification of the putative Class to pursue claims under §§10(b), 20(a) and 20A of the Exchange Act. The elements of a §10(b) claim are: "'(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Amgen*, 568 U.S. at 460-61. There can be no dispute that falsity, scienter, materiality and loss causation are issues common to the Class because "failure of proof" on any of these elements "would end the case" for all Class members. *See id.* at 467-68 ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)"); *id.* at 475 (holding plaintiff need not prove loss causation and falsity at class certification); *Halliburton I*, 563 U.S. at 813 (holding plaintiff need not prove loss causation at class certification). And as explained below, because Plaintiff and the Class are entitled to a presumption of reliance under the fraud-on-the-market theory, reliance is a common question as well.[5]

---

[5]   Common questions also predominate as to Plaintiff's §20(a) control person claim against Hammergren and Beer and §20A insider trading claim against Hammergren because they are derivative of the §10(b) claim. Whether the individual Defendants "controlled [McKesson] is determinative of [their] liability," which is provable by common evidence. *See Hayes*, 2016 WL 7406418, at *3. Similarly, Class members with an insider trading claim "must prove that CEO

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-cv-06525-CRB                                                                          - 8 -

### a.  All Class Members Are Presumed to Have Relied upon Defendants' Misleading Statements and Omissions

The premise of the fraud-on-the-market reliance theory is that, "'in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . .  Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'" *Basic*, 485 U.S. at 241-42; *see also Halliburton II*, 537 U.S. at 270 ("'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'"); *Amgen*, 568 U.S. at 466 ("in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price").  Accordingly, "'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton II*, 573 U.S. at 268.

To invoke the presumption at this stage, Plaintiff need only show that Defendants' false statements were publicly made (as they were here, in conference calls, SEC filings, and otherwise, ¶¶135-139, 141-151, 154-157, 162, 164, 169-181); that Plaintiff "traded the stock between the time the misrepresentations were made and when the truth was revealed," *Halliburton II*, 573 U.S. at 268 (as Plaintiff did here, *see* ECF No. 30-2 at 4); and that McKesson common stock traded in an efficient market.  *Halliburton II*, 573 U.S. at 268, 277-78; *Conn. Ret. Plans*, 660 F.3d at 1175.  "[T]he Supreme Court has suggested that the burden required to establish market efficiency 'is not an onerous one.'"  *Waggoner v. Barclays PLC*, 875 F.3d 79, 97 (2d Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 1702 (2018).  Once Plaintiff has carried its burden, the burden shifts to Defendants to establish that "the alleged misrepresentation did not actually affect the stock's price – that is, that the misrepresentation had no 'price impact.'"  *SEB*, 335 F.R.D. at 287; *Hatamian*, 2016 WL 1042502, at *7.  To do so, Defendants must show that the "asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock."  *Halliburton II*, 573

---

[Hammergren] 'committed underlying violations of Section 10(b) and Rule 10b-5 . . . while in the possession of material, adverse, nonpublic information."  *SEB*, 335 F.R.D. at 286.  As with control person liability, this inquiry will be proved through common evidence.  *See id.*

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-cv-06525-CRB
4831-0858-4656.v1

- 9 -

1    U.S. at 280.  Defendants bear both the burden of production and the burden of persuasion on the

2    issue of price impact.  *Waggoner*, 875 F.3d at 99-103 ("defendants must rebut the *Basic*

3    presumption by disproving reliance by a preponderance of the evidence at the class certification

4    stage").[6]

5           Each of the pertinent legal inquiries establishes that, during the Class Period, McKesson

6    common stock traded in an efficient market.

### (1)    McKesson's NYSE Listing Is Strong Evidence of Market Efficiency

7

8           Throughout the Class Period, McKesson's common stock was listed and traded on one of

9    the largest and most developed securities markets in the world, the New York Stock Exchange.

10   *See* Feinstein Rpt., ¶¶25, 64-65.  In *Basic*, the Supreme Court noted that "[i]n drafting [the

11   Exchange] Act, Congress expressly relied on the premise that securities markets are affected by

12   information, and enacted legislation to facilitate an investor's reliance on the integrity of those

13   markets."  485 U.S. at 245-46.  That McKesson's common stock traded on the NYSE is thus itself

14   a strong indicator of market efficiency for the Company's securities.  *See Huberman v. Tag-It Pac.*

15   *Inc.*, 314 F. App'x 59, 63 (9th Cir. 2009); *Loritz v. Exide Techs.*, 2015 WL 6790247, at *9 (C.D.

16   Cal. July 21, 2015).

### (2)    The *Cammer* Factors Establish McKesson Common Stock Traded in an Efficient Market

17

18

19          In evaluating market efficiency, courts weigh the factors set forth in *Cammer v. Bloom*,

20   711 F. Supp. 1264, 1286-87 (D.N.J. 1989).  *E.g.*, *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 247

21   (N.D. Cal. 2013).  The five *Cammer* factors are: (1) weekly trading volume, (2) analyst coverage,

22   (3) the existence of market makers, (4) the company's ability to file SEC Forms S-3, and (5) the

23   "'empirical facts showing a cause and effect relationship between unexpected corporate events or

24   financial releases and an immediate response in the stock price.'"  *Hayes*, 2016 WL 7406418, at *6

25

26

27   _____

[6]    Plaintiff will respond if Defendants attempt to rebut the presumption of reliance.

28   LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-
cv-06525-CRB
4831-0858-4656.v1

                                                                                            - 10 -

1   (quoting *Cammer*, 711 F. Supp. at 1286-87).  Each of these factors supports a finding of market

2   efficiency for McKesson common stock during the Class Period.[7]

3   **Weekly Trading Volume.**  "'[A]verage weekly trading of 2% or more of the outstanding

4   shares would justify a strong presumption that the market for the security is an efficient one; 1%

5   would justify a substantial presumption.'"  *Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 571

6   (C.D. Cal. 2012).  During the Class Period, McKesson common stock regularly and actively traded

7   on the NYSE with an average weekly trading volume of 7.52 million shares, or 3.28% of

8   McKesson's outstanding shares.  Feinstein Rpt., ¶49.  This heavy trading volume strongly supports

9   the conclusion that the market for McKesson common stock was efficient during the Class Period.

10  *See Hayes*, 2016 WL 7406418, at *5.

11  **Analyst Coverage.**  "The existence of securities analysts following [McKesson common]

12  stock during the class period would imply that the market would rapidly and fully incorporate

13  information into the stock price because analyst reports would likely be 'closely reviewed by

14  investment professionals, who would in turn make buy/sell recommendations to client investors.'"

15  *Diamond Foods*, 295 F.R.D. at 248.  Here, at least 20 securities analysts covered McKesson during

16  the Class Period, including well-known firms such as Deutsche Bank, Evercore, Leerink and Bank

17  of America Merrill Lynch.  Feinstein Rpt., ¶¶52-53.  This factor supports market efficiency.  *See*

18  *Diamond Foods*, 295 F.R.D. at 248 (coverage by 13 analysts supported finding of efficiency).

19  **Market Makers.**  "'A market-maker is one who helps establish a market for securities by

20  reporting bid-and-asked quotations (the price a buyer will pay for a security and the price a seller

21  will sell a security) and who stands ready to buy or sell at these publicly quoted prices.'"  *Ngyuen*,

22  287 F.R.D. at 572.  According to the third *Cammer* factor:

23          market makers . . . further provide a mechanism through which the market could be
            expected to receive information and fully incorporate it into the stock price of a
24

25

26  ───────────────
    [7]   In addition to the five *Cammer* factors, some courts also consider the three factors listed in
    *Krogman v. Sterritt*, 202 F.R.D. 467, 474-48 (N.D. Tex. 2001): market capitalization, float and
27  bid-ask spread.  Feinstein Rpt., ¶¶41-46.  Professor Steven P. Feinstein ("Dr. Feinstein") analyzed
    the three *Krogman* factors and found all three were satisfied.  *Id.*, ¶¶17, 75-85.

28

security, as these individuals "would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Diamond Foods*, 295 F.R.D. at 248. This factor favors a finding of market efficiency because McKesson common stock traded on the NYSE under the supervision of a Designated Market Maker ("DMM"). *See* Feinstein Rpt., ¶¶64, 67. In addition, during the Class Period, there were at least 186 market makers for McKesson common stock, including well-known firms like Morgan Stanley, UBS, Barclays, JPMorgan and Goldman Sachs. *Id.*, ¶67; *see Hayes*, 2016 WL 7406418, at *6 (presence of a DMM and 170 market makers supported finding of efficiency).

**Form S-3.** A company is eligible to file an SEC Form S-3 Registration Statement if it has filed SEC reports for 12 consecutive months and has at least $75 million of float. *See* 17 C.F.R. §239.13. A company's eligibility to file a Form S-3 is indicative of market efficiency because the ability to file these forms indicates that the company is easily able to issue new securities. *Cammer*, 711 F. Supp. at 1285. Here, McKesson was eligible to file Forms S-3 throughout the Class Period, further confirming McKesson traded in an efficient market. Feinstein Rpt., ¶¶73-74, 132; *see Hayes*, 2016 WL 7406418, at *6.

**Cause-and-effect relationship.** The final *Cammer* factor focuses on whether McKesson common stock prices quickly responded to the release of new, Company-specific news events. *Cammer*, 711 F. Supp. 1287.[8] To test whether McKesson common stock responded to new information, Plaintiff's expert, Professor Steven P. Feinstein, Ph.D., CFA, performed a collective event study for McKesson common stock, focusing on McKesson's earnings announcements and comparing those events to all other days during the Class Period. Feinstein Rpt., ¶¶86-131. As detailed in his report, Dr. Feinstein's event study identified a cause-and-effect relationship between the release of new, McKesson-specific information and the movement in McKesson's stock price.

---

[8] But this direct evidence of price impact – usually shown through an event study – "is not always necessary to establish market efficiency and invoke the *Basic* presumption." *Waggoner*, 875 F.3d at 96-97; *see also Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1120-21 (C.D. Cal. Apr. 19, 2018) (holding similarly).

Feinstein Rpt., ¶¶99-127.  Thus, this factor, like the other factors, supports a finding that the market for McKesson common stock was efficient during the Class Period.

### b. Damages Will Be Calculated in the Same Manner for All Class Members

Once the common questions of liability are resolved, the computation of damages that each Class member suffered is "'virtually a mechanical task.'"  *Diamond Foods*, 295 F.R.D. at 252. The Ninth Circuit is clear that "the need for individual damages calculations does not, alone, defeat class certification."  *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

While unnecessary for certification, the damages for all putative Class members can be calculated using the same methodology, *i.e.*, the out-of-pocket measure of damages.  Feinstein Rpt., ¶¶135-145.[9]  Because the methodology for calculating per-share damages will be the same for each Class member, damages constitute a common question.  *Id.*  Indeed, this Court recently came to this same conclusion, determining that Dr. Feinstein's "damages method is specifically tied to plaintiff['s] claims under Section 10(b) and provides for damages equal to the inflation" in the stock price "that is attributable to the alleged misstatements and omissions."  *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018); *see Luna*, 2017 WL 4865559, at *5-*6.  Section 20A damages can also be measured using a common methodology.  Feinstein Rpt., ¶¶146-154.  As such, predominance is satisfied.

### 2. Class Treatment Is Superior to Other Methods of Adjudication

The superiority requirement of Rule 23(b)(3) requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In making this assessment, courts must consider: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and (4) the

---

[9]    A jury can determine the total inflation that came out of McKesson's stock price based on the results of an event study similar to that done by Dr. Feinstein in support of his analysis and opinion regarding the efficiency of the market for McKesson common stock.  *E.g.*, *Diamond Foods*, 295 F.R.D. at 251 ("'The event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation.'").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-cv-06525-CRB
4831-0858-4656.v1

- 13 -

1    likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  These factors

2    readily favor superiority of the class action device.

3          Here, Class members' interests in individually controlling the prosecution of separate

4    actions are minimal.  Plaintiff is not aware of any related individual actions, and "individual

5    damages are likely small enough to be economically prohibitive as individual claims," particularly

6    in light of the high hurdles – and corresponding litigation costs – set by the Private Securities

7    Litigation Reform Act of 1995.  *Hatamian*, 2016 WL 1042502, at *10 (citing *Zinser v. Accufix*

8    *Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)).

9          Further, the Northern District of California is a desirable forum for this class action because

10   individual Class members are geographically dispersed, McKesson was headquartered in this

11   District during the Class Period, and many of the acts and practices complained of occurred in

12   substantial part in this District.  This Court is also well acquainted with this action, having already

13   considered (and largely denied) Defendants' motion to dismiss and motion for leave to move for

14   reconsideration of the motion to dismiss order.  *See Nguyen*, 287 F.R.D. at 575.

15         Finally, Plaintiff does not foresee any management difficulties that will preclude this action

16   from being maintained as a class action.  In fact, the alternative of "a mountain of largely identical

17   cases" would be, at best, impracticable to manage.  *Bebault v. DMG Mori USA, Inc.*, 2020 WL

18   2065646, at *6 (N.D. Cal. Apr. 29, 2020).  Because Plaintiff and the Class are "'united by a

19   common core of facts, and a presumption of reliance on an efficient market,'" class treatment is

20   "'the superior way to litigate [this] case alleging violations of securities fraud.'"  *Hatamian*, 2016

21   WL 1042502, at *10.

22   **C.     Robbins Geller Should Be Appointed Class Counsel**

23         Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel."  Fed.

24   R. Civ. P. 23(g)(1).  In appointing class counsel, the Court considers counsel's work "in identifying

25   or investigating potential claims in the action," "counsel's experience in handling class actions,"

26   "counsel's knowledge of the applicable law" and "the resources that counsel will commit to

27

28   LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION,
     APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-
     cv-06525-CRB
     4831-0858-4656.v1

1   representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Plaintiff's chosen counsel, Robbins

2   Geller, readily satisfies this test.

3         Robbins Geller is well-qualified to prosecute this case on behalf of Plaintiff and the Class,

4   having successfully prosecuted numerous securities fraud class actions on behalf of injured

5   investors.  *See* Ex. C; *supra*, §III.A.4.  Here, lead counsel has already undertaken a vigorous

6   prosecution of this action, including conducting an extensive investigation of the claims,

7   successfully opposing Defendants' motion to dismiss, engaging in party and third-party discovery,

8   and pursuing class certification.  Accordingly, Robbins Geller fulfills the requirements of Rule

9   23(g), and Plaintiff respectfully requests that the Court appoint it as class counsel.

10  **IV.    CONCLUSION**

11        Plaintiff respectfully requests that the Court grant this Motion, certify the proposed Class,

12  appoint Plaintiff as class representative, and appoint Robbins Geller as class counsel.

13  DATED:  November 16, 2020                    ROBBINS GELLER RUDMAN
                                                       & DOWD LLP
14                                               SPENCER A. BURKHOLZ
                                                 LUKE O. BROOKS
15                                               JONAH H. GOLDSTEIN
                                                 ANGEL P. LAU
16                                               CHRISTOPHER D. STEWART
                                                 ANDREW W. HUTTON
17                                               ERIKA OLIVER

18

19                                                    s/ SPENCER A. BURKHOLZ
                                                       SPENCER A. BURKHOLZ
20
                                                 655 West Broadway, Suite 1900
21                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
22                                               619/231-7423 (fax)

23                                               ROBBINS GELLER RUDMAN
                                                       & DOWD LLP
24                                               SHAWN A. WILLIAMS
                                                 Post Montgomery Center
25                                               One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
26                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)

27
                                                 Lead Counsel for Lead Plaintiff
28
    LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION,
    APPOINTMENT OF CLASS REPRESENTATIVE, AND APPROVAL OF CLASS COUNSEL - 3:18-
    cv-06525-CRB                                                                  - 15 -
    4831-0858-4656.v1

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on November 16, 2020, I authorized the

3

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

5

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

6

to the non-CM/ECF participants indicated on the attached Manual Notice List.

7

<u>s/ SPENCER A. BURKHOLZ</u>
SPENCER A. BURKHOLZ

8

9

ROBBINS GELLER RUDMAN
& DOWD LLP

10

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058

11

619/231-7423 (fax)

12

E-mail:  spenceb@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:18-cv-06525-CRB Evanston Police Pension Fund v. McKesson Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com

- **Jaime Allyson Bartlett**
  jbartlett@sidley.com,sfefilingnotice@sidley.com,zalam@sidley.com,tberninzoni@sidley.com,jamie-bartlett-0904@ecf.pacerpro.com,enorwood@sidley.com,tmagana@sidley.com,zarine-alam-6203@ecf.pacerpro.com,sfdocket@sidley.com,dgiusti@sidley.com,rwechkin@sidley.com

- **Sara B. Brody**
  sbrody@sidley.com,ddelarocha@sidley.com,shemmendinger@sidley.com,sfdocket@sidley.com,therron@sidley.com,bgillig@sidley.com,sara-brody-9555@ecf.pacerpro.com

- **Luke O Brooks**
  lukeb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A. Burkholz**
  SpenceB@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Winfield Hutton**
  dhutton@rgrdlaw.com

- **Angel Puimei Lau**
  alau@rgrdlaw.com,8467512420@filings.docketbird.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com,alau@ecf.courtdrive.com,scaesar@rgrdlaw.com

- **Ryan Anthony Llorens**
  ryanl@rgrdlaw.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,kmccormack@rgrdlaw.com

- **Christopher Dennis Stewart**
  CStewart@rgrdlaw.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Robin Eve Wechkin**
  rwechkin@sidley.com,robin-wechkin-9585@ecf.pacerpro.com,sfefilingnotice@sidley.com,sfdocket@sidley.com,mhanhan@sidley.com,enorwood@sidley.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)