1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SPENCER A. BURKHOLZ (147029)
   ELLEN GUSIKOFF STEWART (144892)
3  LUKE O. BROOKS (212802)
   CHRISTOPHER D. STEWART (270448)
4  JEFFREY J. STEIN (265268)
   ANDREW W. HUTTON (172033)
5  ERIKA OLIVER (306614)
   NATALIE F. LAKOSIL (322836)
6  655 West Broadway, Suite 1900
   San Diego, CA  92101
7  Telephone:  619/231-1058
   619/231-7423 (fax)
8  spenceb@rgrdlaw.com
   elleng@rgrdlaw.com
9  lukeb@rgrdlaw.com
   cstewart@rgrdlaw.com
10 jstein@rgrdlaw.com
   dhutton@rgrdlaw.com
11 eoliver@rgrdlaw.com
   nlakosil@rgrdlaw.com
12
   Lead Counsel for Lead Plaintiff
13
   [Additional counsel appear on signature page.]
14
                    UNITED STATES DISTRICT COURT
15
                    NORTHERN DISTRICT OF CALIFORNIA
16
   EVANSTON POLICE PENSION FUND,      ) Case No. 3:18-cv-06525-CRB
17 Individually and on Behalf of All Others )
   Similarly Situated,                  ) CLASS ACTION
18                                       )
                         Plaintiff,      ) LEAD PLAINTIFF'S NOTICE OF
19                                       ) UNOPPOSED MOTION AND UNOPPOSED
           vs.                           ) MOTION FOR PRELIMINARY APPROVAL
20                                       ) OF PROPOSED SETTLEMENT, AND
   MCKESSON CORPORATION, et al.,         ) MEMORANDUM OF POINTS AND
21                                       ) AUTHORITIES IN SUPPORT THEREOF
                         Defendants.     )
22 _____) DATE:      January 20, 2023
                                           TIME:      10:00 a.m.
23                                         JUDGE:     Hon. Charles R. Brever
                                           CTRM:      6, 17th Floor
24

25

26

27

28

4873-6405-9198.v1

1

2

**NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

3

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

4

5

6

7

8

9

10

11

12

13

14

15

     **PLEASE TAKE NOTICE** that on January 20, 2023, at 10:00 a.m., before the Honorable Charles R. Breyer, at the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 6 - 17th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Trust Fund for Operating Engineers ("Lead Plaintiff" or the "Fund") will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned action ("Action"); (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation[1]; (3) authorizing the retention of Gilardi & Co. LLC as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Class; and (5) setting a hearing date for final approval of the Settlement ("Final Approval Hearing"), as well as the schedule for various deadlines in connection with the Settlement.

16

17

     This unopposed motion is supported by the below memorandum of points and authorities and Appendix A thereto, the Stipulation and exhibits thereto, and the Declaration of Peter Crudo, filed herewith.

18

19

20

     A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

21

22

23

24

25

26

27

28

---

[1]   Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation of Settlement dated November 30, 2022 ("Stipulation"), filed herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    OVERVIEW OF THE LITIGATION ................................................................2

III.   THE SETTLEMENT TERMS.............................................................................3

IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............5

       A.     Lead Plaintiff and Its Counsel Have Adequately Represented the Class ...............6

       B.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length
              Negotiations by Informed, Experienced Counsel Who Were Aware of the
              Risks of the Action...........................................................................................6

       C.     The Relief Provided to the Class Is Adequate ........................................................7

              1.     The Substantial Benefits for the Class, Weighed Against the Costs,
                     Risks, and Delay of Further Litigation, Support Preliminary
                     Approval ...................................................................................................7

              2.     The Proposed Method for Distributing Relief Is Effective.........................9

              3.     Attorneys' Fees .......................................................................................10

              4.     Other Agreements Made In Connection With the Global
                     Resolution of the Case ..........................................................................11

              5.     The Proposed Plan of Allocation Is Designed to Treat Class
                     Members Equitably...................................................................................11

       D.     The Remaining Ninth Circuit Factors Are Satisfied.............................................12

              1.     Risk of Maintaining Class Action Status Through Trial ...........................12

              2.     Experience and Views of Counsel ...........................................................13

V.     CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT
       IS APPROPRIATE ...........................................................................................13

VI.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
       CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE
       PSLRA, AND DUE PROCESS.........................................................................14

VII.   NORTHERN DISTRICT OF CALIFORNIA *PROCEDURAL GUIDANCE* .................15

VIII.  CONCLUSION.................................................................................................15

1

## TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ..................................................................7

5

6

*Baker v. Seaworld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ...........................................14

7

*Ciuffitelli v. Deloitte & Touche LLP*,
    2019 WL 1441634 (D. Or. Mar. 19, 2019) ..............................................12

8

9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...............................................................................14

10

11

*Fleming v. Impax Labs. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022) ............................................7

12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................5, 6, 10

13

14

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) .............. *passim*

15

16

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ....................................................................5

17

18

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................10

19

20

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)............................................8

21

*In re Genworth Fin. Sec. Litig.*,
    2016 WL 7187290 (E.D. Va. Sept. 26, 2016)..........................................10

22

23

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ....................................................................5

24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................12

25

26

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017) ......................................................10, 14

27

28

**Page**

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
  *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019) ............................................................10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................................11

*In re RH, Inc. Sec. Litig.*,
  2019 WL 5538215 (N.D. Cal. Oct. 25, 2019).......................................................12

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
  2016 WL 8201593 (N.D. Cal. July 29, 2016)........................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ................................................ *passim*

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ...............................................6, 7, 8

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)........................................................11

*Kui Zhu v. Taronis Techs. Inc.*,
  2020 WL 6868906 (D. Ariz. Nov. 23, 2020).........................................................14

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017),
  *aff'd*, 881 F.3d 1111 (9th Cir. 2018) .......................................................................8

*Luna v. Marvell Tech. Grp.*,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .........................................................8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)...............................................................................................15

*Norris v. Mazzola*,
  2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ......................................................13

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ..............................................................................10

**Page**

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) .................................................................5, 8, 14

*Salazar v. Midwest Servicing Grp., Inc.,*
2018 WL 3031503 (C.D. Cal. June 4, 2018) ...............................................7

*Spann v. J.C. Penney Corp.,*
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ......................................................14

*Spann v. J.C. Penney Corp.,*
314 F.R.D. 312 (C.D. Cal. 2016) ................................................................11

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ..........................................................................8

*Vataj v. Johnson,*
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ......................................11, 12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b).............................................................................................................2
§78t(a).............................................................................................................2
§78t-1..............................................................................................................2
§78u-4..............................................................................................................1

Federal Rules of Civil Procedure
Rule 23 ..........................................................................................................14
Rules 23(a) ....................................................................................................14
Rules 23(b)(3) ...............................................................................................14
Rule 23(c)(2)(B).............................................................................................14
Rule 23(e)...................................................................................................2, 5
Rule 23(e)(1)..............................................................................................5, 14
Rule 23(e)(1)(B)........................................................................................13, 14
Rule 23(e)(2)...........................................................................................1, 5, 13
Rule 23(e)(2)(A).............................................................................................6
Rule 23(e)(2)(B).............................................................................................6
Rule 23(e)(2)(C)(i).........................................................................................7
Rule 23(e)(2)(C)(ii).......................................................................................9
Rule 23(e)(2)(C)(iii).....................................................................................10
Rule 23(e)(2)(D)...........................................................................................11
Rule 23(h)(1).................................................................................................15

1

2                                                                          **Page**

3
**SECONDARY AUTHORITIES**

4

5    Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action*
        *Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) ......................................................9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court will likely be able to certify the Class for purposes of effectuating the Settlement.

2.      Whether the Court will likely be able to approve the proposed $141 million Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class ("Class Members").

3.      Whether the proposed form and content of the Postcard Notice, Notice, Proof of Claim Form, and Summary Notice, and the plan for disseminating these materials to Class Members should be approved.

4.      Whether the Court should schedule a Final Approval Hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and expenses.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After more than four years of litigation and following extensive arm's-length negotiations, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for $141,000,000.00 for the Class's benefit.  Lead Plaintiff now requests the Court preliminarily approve the proposed Settlement.

As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of Greg Danilow of Phillips ADR, a highly respected mediator with extensive experience in complex securities litigation.  Lead Plaintiff reached the Settlement only after it had a thorough appreciation for the strengths and weaknesses of the case.  Lead Plaintiff: (i) drafted and filed a detailed Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 43) ("Complaint") and Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 223-1) ("Amended Complaint"); (ii) partially successfully opposed Defendants' motion to dismiss the Complaint and briefed its oppositions to Defendants' motions to dismiss the Amended Complaint; (iii) obtained and reviewed substantial document discovery from Defendants and third parties; (iv) obtained class certification and opposed Defendants' motion for partial summary judgment; and (v) prepared a detailed mediation statement and participated in a full-day mediation with Mr. Danilow and multiple follow-up conversations.  As set forth below, the Settlement is a tremendous result that falls well within the range of possible approval.

Lead Plaintiff also requests certification of the October 24, 2013 through October 27, 2016 class period ("Class Period") for settlement purposes and approval of the form and substance of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim Form ("Proof of Claim" or "Claim Form"), Summary Notice, and Postcard Notice, appended as Exhibits A-1, A-2, A-3 and A-4, respectively, to the Stipulation.  Lead Plaintiff also seeks the Court's approval of Gilardi & Co. LLC ("Gilardi") as Claims Administrator and the means and methods for disseminating notice of the Settlement, and a finding that such notice comports with due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of

1  1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq*.

2      The Settlement meets the standards for preliminary approval because it is likely this Court

3  will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  Should

4  the Class be preliminarily approved, Lead Plaintiff will be able to notify the Class and solicit

5  claims, requests for exclusion, and objections, at which point the Court will be able to consider

6  whether to finally approve the Settlement.

7  **II.      OVERVIEW OF THE LITIGATION**

8      The initial complaint was filed on October 25, 2018.  ECF 1.  On February 8, 2019, the

9  Court appointed the Fund as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins

10 Geller" or "Lead Counsel") as lead counsel.  ECF 40.  Lead Plaintiff filed the Complaint on April

11 9, 2019, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934

12 ("Exchange Act") against all Defendants and §20(A) of the Exchange Act against Defendant John

13 H. Hammergren.  ECF 43.

14     On June 10, 2019, Defendants moved to dismiss the Complaint.  ECF 49.  Lead Plaintiff

15 opposed Defendants' motion (ECF 53), and the Court heard oral argument on October 18, 2019

16 (*see* ECF 62).  On October 30, 2019, the Court denied in part and granted in part Defendants'

17 motion.  ECF 67 ("MTD Order").  Defendants requested leave to move for reconsideration of the

18 MTD Order on December 6, 2019, which Lead Plaintiff opposed.  ECFs 70, 71.  On December 19,

19 2019, the Court denied Defendants' request for leave and clarified that two of the four alleged

20 corrective disclosures were inadequately pled, leaving two alleged corrective disclosures of

21 January 11, 2016 and November 3, 2016.  ECF 72.

22     The parties engaged in extensive discovery, including litigating multiple disputes.  *E.g.*,

23 ECFs 94, 110, 112, 131, 172-175, 193.  Lead Plaintiff issued 56 requests for production, 21

24 interrogatories, and 267 requests for admission on Defendants, and subpoenas to 35 third parties.

25 In total, Lead Plaintiff obtained and reviewed nearly 1.7 million pages of documents.

26     On November 16, 2020, Lead Plaintiff moved to certify the Class, which Defendants

27 opposed.  ECF 133 ("Class Certification Motion"); ECF 139.  On April 8, 2021, the Court heard

28 oral argument, granted Lead Plaintiff's motion, and permitted Defendants to file a motion for

1   partial summary judgment on loss causation grounds with respect to the November 3, 2016

2   corrective disclosure.  ECFs 157, 159.  Defendants moved for partial summary judgment on June

3   7, 2021, which Lead Plaintiff opposed.  ECFs 166, 177.  On October 21, 2021, the Court heard

4   oral argument and granted the motion, shortening the class period to October 24, 2013 through

5   January 11, 2016.  ECFs 209, 212 ("MSJ Order").  Thereafter, on December 29, 2021, Lead

6   Plaintiff filed the Amended Complaint, which alleges a Class Period of October 24, 2013 through

7   October 27, 2016.  *See* ECF 223-1.  On February 14, 2022, Defendants moved to dismiss the

8   Amended Complaint, which Lead Plaintiff opposed.  ECFs 237, 240, 245, 257.

9           On May 6, 2022, the parties, their counsel, and representatives of the insurance carriers for

10  the applicable D&O insurance policies attended an all-day mediation with Mr. Danilow.  Prior to

11  the mediation, the parties submitted mediation statements.  While that mediation brought the

12  parties closer to a resolution, the Action remained unresolved at that time.  The parties continued

13  their mediation efforts with the assistance of Mr. Danilow while simultaneously preparing for the

14  hearing on Defendants' motions to dismiss.  On September 21, 2022, Mr. Danilow issued a

15  mediator's proposal to settle the Action for $141 million, which the Settling Parties accepted.

16  **III.    THE SETTLEMENT TERMS**

17          This Settlement requires Defendants to pay, or cause to be paid, $141 million into the Escrow

18  Account, which amount, plus interest, comprises the Settlement Fund.  Stipulation, ¶2.1.  Notice to

19  the Class and the cost of settlement administration ("Notice and Administration Expenses") will be

20  funded by the Settlement Fund.  *Id.*, ¶2.7.  Lead Plaintiff proposes a nationally recognized class

21  action settlement administrator to be retained subject to the Court's approval.  Gilardi was chosen

22  because of its experience and the quality of its work in prior engagements with Lead Counsel, and

23  because it is best suited to execute the claims administration in this Action.  Lead Counsel

24  respectfully requests that the Court approve its selection.  Based on the estimates provided by the

25  proposed claims administrator, including notice and the preparation and management of the

26  Settlement website, the parties expect notice and claims administration costs to be approximately

27  $715,000 through the initial distribution. *See, e.g.*, Crudo Decl., ¶28.  The proposed notice plan and

28  plan for claims processing is discussed below in §§IV.C.5 and VI and in the Crudo Declaration.

1    The Notice provides that Lead Counsel will move for final approval of the Settlement and:
2    (a) an award of attorneys' fees in the amount of no more than 25% of the Settlement Amount;
3    (b) payment of expenses or charges resulting from the prosecution of the Action not in excess of
4    $1.5 million; and (c) any interest on such amounts at the same rate and for the same period as is
5    earned by the Settlement Fund.  The Notice explains that such fees and expenses shall be paid
6    from the Settlement Fund.

7    Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved
8    attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the
9    Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set
10   forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.  Any
11   amount remaining following the distribution shall be redistributed in an economically feasible
12   manner.  The Plan of Allocation treats all Class Members equitably based on the timing and
13   amount of their McKesson common stock purchases, acquisitions, and sales.

14   The Settling Parties have entered into a Supplemental Agreement, which provides that if
15   prior to the Final Approval Hearing, requests for exclusion from the Class by Persons who would
16   otherwise be members of the Class, but who timely and validly request exclusion from the Class,
17   exceeds a certain threshold, Defendants shall have the option (but not the obligation) to terminate
18   the Settlement.  Stipulation, ¶7.3.

19   In exchange for the benefits provided under the Stipulation, Class Members will release "any
20   and all claims, rights, liabilities, and causes of action of every nature and description, including both
21   known claims and Unknown Claims . . . that both (i) arise out of, are based upon, or are related in
22   any way to the allegations, acts, facts, matters, occurrences, disclosures, filings, statements,
23   representations, or omissions that were or could have been alleged by Lead Plaintiff and all other
24   Class Members in the Action . . . , and (ii) relate to the purchase or acquisition of McKesson common
25   stock during the Class Period."  Stipulation, ¶1.24.  This release "is limited to claims that relate to
26   both the complaint's factual allegations and to the purchase or ownership of" McKesson common
27   stock and therefore "ensure[s] that 'the released claim[s] [are] based on the identical factual predicate
28   as that underlying the claims in the settled class action.'"  *In re Volkswagen "Clean Diesel" Mktg.,*

1  *Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018)

2  ("*Volkswagen I*") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

3      Lastly, under the terms of the Stipulation, Defendants have no right to the return of the

4  Settlement Fund for any reason upon the occurrence of the Effective Date.  Stipulation, ¶5.9.

5  ## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
        APPROVAL

6

7      Courts recognize that public policy strongly favors settlements to resolve disputes,

8  "'particularly where complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Econ.*

9  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Moreover, courts should defer to "the private consensual

10  decision of the parties" in such cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

11  2009).

12      Rule 23(e) requires judicial approval for settlement of claims brought as a class action.

13  Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely

14  be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

15  judgment on the proposal."   Rule 23(e)(2) provides that a proposed class settlement may be

16  approved "only if after a hearing and only on finding that it is fair, reasonable, and adequate." Fed.

17  R. Civ. P. 23(e)(2).  In making this assessment, the Court must consider whether Lead Plaintiff

18  and Lead Counsel (a) "have adequately represented the class"; (b) "the proposal was negotiated at

19  arm's length"; (c) "the relief provided for the class is adequate"; and (d) "the proposal treats class

20  members equitably relative to each other."  *Id.*  In addition, the Ninth Circuit uses the following

21  factors for preliminary approval, several of which overlap with Rule 23(e)(2):

22      [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely
        duration of further litigation; the risk of maintaining class action status throughout
23      the trial; the amount offered in settlement; the extent of discovery completed and
        the stage of the proceedings; the experience and views of counsel; the presence of
24      a governmental participant; and the reaction of the class members to the proposed
        settlement."

25  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

26      As discussed below, the proposed Settlement satisfies each of the factors identified under

27  Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that Notice of the proposed

28  Settlement should be sent to the Class in advance of the Final Approval Hearing.

1

2

### A.     Lead Plaintiff and Its Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the class.   This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery completed and the stage of the proceedings."   *Hanlon*, 150 F.3d at 1026.   As explained above, Lead Plaintiff and its counsel satisfy this factor as they have diligently prosecuted this Action for over four years.   *See supra*, §§I-II.   Given Lead Plaintiff's and Lead Counsel's demonstrated prosecution of the Action, it is without question that they have adequately represented the Class. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement").

### B.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Action

The Rule 23(e)(2)(B) factor asks whether "the [settlement] proposal was negotiated at arm's length."   As noted above, the proposed Settlement follows extensive litigation over the course of over four years, during which Lead Plaintiff obtained and reviewed nearly 1.7 million pages of discovery, opposed motions to dismiss the Complaint and Amended Complaint, and opposed Defendants' motion for partial summary judgment.   *Supra*, §I-II; *see also Volkswagen I*, 2018 WL 6198311, at *5 ("Having used discovery and motion practice to obtain information about the case, Plaintiffs were able to assess the merits of the claims and to determine whether Defendants' settlement offers were reasonable.").   The Settlement was achieved only after an all-

1   day mediation with Mr. Danilow of Phillips ADR, followed by additional arm's-length mediation

2   negotiations overseen by Mr. Danilow.  As part of the settlement discussions, Lead Counsel and

3   Defendants' Counsel prepared and presented submissions concerning their respective views on the

4   merits of the Action.  *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead Counsel also attests that

5   both sides engaged in a series of intensive, arm's-length negotiations before they reached an

6   agreement in principle to settle. . . .  There is no reason to doubt the veracity of Lead Counsel's

7   representations.").  The foregoing evinces that the Settlement is "the product of serious, informed,

8   and noncollusive negotiations."  *Volkswagen I*, 2018 WL 6198311, at *4-*5.

9         **C.**    **The Relief Provided to the Class Is Adequate**

10              **1.**    **The Substantial Benefits for the Class, Weighed Against the**

11                      **Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval**

12        Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of plaintiffs'

13  case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount

14  offered in settlement" are also satisfied because the $141 million recovery provides a significant

15  and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by

16  continued litigation.  Securities cases, like the present one, "'are highly complex and . . . securities

17  class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13;

18  *see Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be

19  successful, a securities class-action plaintiff must thread the eye of a needle made smaller and

20  smaller over the years by judicial decree and congressional action.").

21        While Lead Plaintiff remains confident in its ability to ultimately prove the alleged claims,

22  further litigation – including a trial – is always a risky proposition.  *See, e.g.*, *Salazar v. Midwest*

23  *Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a "settlement agreement's

24  elimination of risk, delay, and further expenses weighs in favor of approval").  Further, complex

25  securities fraud class actions such as this one present myriad risks that a plaintiff must overcome

26  in order to ultimately secure a recovery.  *See, e.g.*, *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496,

27  at *6 (N.D. Cal. July 15, 2022) (finding litigation risks weighed in favor of final approval of

28  securities class settlement where risks included a pending motion to dismiss and "the difficulty of

1  needing to prove a 'case within a case' – that is, the falsity of Defendants' public statements

2  relating to Defendants' alleged anti-competitive conduct – to establish liability").

3        While Lead Plaintiff would be required to prove all elements of its claims to prevail,

4  Defendants need only succeed on one defense to potentially defeat the entire Action.  In fact, they

5  successfully obtained dismissal of two of the four originally-pled corrective disclosures when they

6  requested clarification of the Court's MTD Order and obtained summary judgment on a third

7  disclosure.  And in their pending motions to dismiss, Defendants advanced several arguments

8  disputing loss causation as to the one corrective disclosure that remained following the Court's

9  MTD and MSJ Orders, as well as the falsity of their alleged misstatements, scienter, and loss

10  causation as to the two disclosures Lead Plaintiff sought to add (one of which was previously

11  dismissed by the MTD Order).  Even if the Court disagreed with Defendants this time, each of

12  these issues would present significant obstacles to Lead Plaintiff's success at summary judgment

13  or trial.  *See, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31,

14  2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss

15  causation and damages at trial. . . .  Lead Plaintiff would risk recovering nothing without a

16  settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018)

17  (noting the risks of proving scienter, loss causation, and damages at trial).

18        Lead Plaintiff would also need to prevail at summary judgment, pretrial motions, trial,

19  and subsequent appeals, a process that could possibly extend for years.  Settlement is favored

20  where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents

21  numerous risks beyond the "'inherent risks of litigation.'"  *Low v. Trump Univ., LLC*, 246

22  F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (quoting

23  *Rodriguez*, 563 F.3d at 966, and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.

24  1993)); *Volkswagen II*, 2019 WL 2077847, at *2 ("[E]ven if Plaintiffs had prevailed, their

25  recovery – after class certification, trial, and appeals – would have come years in the future.

26  Taking $ 48 million now, instead of holding out for the chance of $147 million at some point in

27  the future, is a sensible decision.").

28

1    The $141 million Settlement balances the risks, costs, and delay inherent in complex cases

2    evenly with respect to all parties.   Lead Plaintiff negotiated a Settlement that recovers

3    approximately 20% of the estimated reasonably recoverable damages for the one corrective

4    disclosure remaining following the Court's MTD and MSJ Orders.[2]   This result is many multiples

5    of the median ratio of settlements to investor losses in securities cases in 2021.  *See* Janeen

6    McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-*

7    *Year Review* at 24, Figure 22 (NERA Jan. 25, 2022) (median ratio of settlement to investor losses

8    was 1.8% in 2021); *see Hefler*, 2018 WL 6619983, at *6 ("[C]ounsel's preliminary approval

9    motion included information regarding the settlement outcomes of similar cases, further indicating

10   that counsel 'had an adequate information base' when negotiating the settlement.").

11   Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion

12   for preliminary approval.  Considering the risks of continued litigation and the time and expense

13   that would be incurred to prosecute the Action through a trial, the $141 million Settlement is a

14   strong recovery that is in the Class's best interests.

15   **2.    The Proposed Method for Distributing Relief Is Effective**

16   As demonstrated below in §VI and in the Crudo Declaration, the methods of proposed

17   notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.   The notice plan

18   includes direct mail postcard notice to all those who can be identified with reasonable effort

19   supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national

20   newswire service.  In addition, a Settlement-specific website will be created where key documents

21   will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

22   Crudo Decl., ¶¶7-18.  This is similar to the notice plan proposed and approved in *Volkswagen I*,

23   2018 WL 6198311, at *7-*8.

24   The claims process is also effective and includes a standard claim form that requests the

25   information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation

26

27   [2]   If the Court were to accept one or both of the corrective disclosures the Amended Complaint

28   seeks to add, the percentage of recovery would have been lower.

1  ("Plan").  The Plan will govern how Class Members' claims will be calculated and, ultimately,

2  how money will be distributed to Authorized Claimants.  The Plan was prepared with the assistance

3  of Lead Plaintiff's damages expert and is based primarily on the expert's event study and analysis

4  estimating the amount of artificial inflation in the price of McKesson common stock during the

5  Class Period.  A thorough claim review process, including how deficiencies are addressed, is also

6  explained in the Crudo Declaration.  *Id.*, ¶¶24-26.

7  ### 3.  Attorneys' Fees

8  Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

9  including timing of payment."  As discussed above (*supra* §III), Lead Counsel intends to seek an

10  award of attorneys' fees of no more than 25% of the Settlement Amount (which, given Lead

11  Counsel's lodestar to date of approximately $26.4 million[3] would result in a multiplier of

12  approximately 1.33)[4] and expenses in an amount not to exceed $1.5 million, plus interest on both

13  amounts.  25% is the "benchmark award for attorney fees," *Hanlon*, 150 F.3d at 1029, and in this

14  case would reflect the successful result achieved for the Class and is in line with other settlements

15  approved in the Ninth Circuit.  *See, e.g.*, *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th

16  Cir. 2017) (affirming attorneys' fee award of 25% of $75 million settlement) (citing *Powers v.*

17  *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at

18  *9 (C.D. Cal. Oct. 25, 2016) (awarding counsel 25% of a $95 million settlement).  In addition, Lead

19  Counsel will request that any award of fees and expenses be paid at the time the Court makes its

20  award.  *See In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29,

21  2016) (fees to be paid "immediately upon entry of this Order"); *In re Genworth Fin. Sec. Litig.*,

22  2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation

23

---

24  [3]   If preliminary approval is granted, Lead Counsel will present its total lodestar in connection
25  with its fee application at the final approval stage, after further detailed review and adjustment of
   its contemporaneous daily time entries to account for billing judgment.

26  [4]   A 1.33 multiplier is reasonable.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *14 (awarding fee
27  representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL
   6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019) (awarding
28  fee representing a 3.66 multiplier).

Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

### 4.    Other Agreements Made In Connection With the Global Resolution of the Case

The Settling Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the requests for exclusion from the Class equals or exceeds an agreed-upon threshold, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3. Such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). While the Supplemental Agreement is identified in the Stipulation, ¶7.3, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[5]

### 5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation ("Plan"), treats class members equitably relative to each other. Drafted with the assistance of Lead Plaintiff's damages expert, the Plan is fair, reasonable, and adequate because it does not treat the Lead Plaintiff or any other Class Member preferentially. *See Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

The Plan, set forth in the Notice (Stipulation, Ex. A-1 at 8-13), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.17) to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. In developing the Plan, Lead Plaintiff's damages expert calculated the potential amount of estimated alleged artificial inflation in McKesson common stock proximately caused by Defendants' alleged false and misleading statements and material omissions. To do this, Lead Plaintiff's damages expert considered the market and industry adjusted price changes in McKesson's stock price following certain corrective

---

[5]    *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

1  disclosures regarding McKesson and the allegations in the Amended Complaint.  Based on the

2  formula in the Plan, a "Recognized Loss Amount" will be calculated for each purchase or

3  acquisition of McKesson common stock.  The Net Settlement Fund will be distributed to

4  Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

5  The amount of the payment will depend on, among other factors, how many Class Members file

6  valid claims, and the aggregate value of the Recognized Claims represented by valid and

7  acceptable Claim Forms.[6]

8       Lead Plaintiff, just like all other Class Members, will be subject to the same formula for

9  distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18

10  (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment

11  to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all

12  Class Members and Class Representatives equally in that they will receive a *pro rata* distribution

13  based of the Settlement Fund based on their net losses").  This Court has previously found plans

14  that award *pro rata* shares to each class member to be fair and reasonable.  *See, e.g.*, *Vataj*, 2021

15  WL 1550478, at *10 ("The Settlement Fund will thus be distributed on a *pro rata* basis according

16  to each class member's recognized loss."); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *20

17  (N.D. Cal. Oct. 25, 2019) (approving plan of allocation using *pro rata* shares).  Accordingly, the

18  Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

19       **D.**     **The Remaining Ninth Circuit Factors Are Satisfied**

20            **1.**     **Risk of Maintaining Class Action Status Through Trial**

21       As discussed *supra* §IV.C.1., Defendants successfully shortened the originally-pled class

22  period via their motion to dismiss the Complaint and for partial summary judgment.  Defendants'

23  motions to dismiss the Amended Complaint in its entirety are still pending before the Court.

24  Assuming the Amended Complaint survived Defendants' pending motions to dismiss, Defendants

25  could have moved to decertify the Class or further shorten the Class Period.  *See, e.g.*, *In re Immune*

---

[6]    With respect to the July 30, 2015 and October 28, 2016 stock price declines, the Plan reflects a 50% reduction for litigation risk to account for the fact that those disclosures had not been accepted by the Court at the time the Settlement was reached.

1   *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that defendants

2   would attempt to shorten the class period based on evidence produced during discovery supported

3   settlement).  Accordingly, this factor supports preliminary approval.

4       **2.**        **Experience and Views of Counsel**

5          The opinion of experienced counsel supporting a class settlement after arm's-length

6   negotiations is entitled to considerable weight.  *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D.

7   Cal. Dec. 19, 2017).  "[I]ndeed a presumption of fairness is usually appropriate if class counsel

8   recommends the settlement after arm's-length bargaining."  *Volkswagen I*, 2018 WL 6198311,

9   at *5.  Lead Counsel here has significant experience in securities and other complex class action

10  litigation and has negotiated numerous other substantial class action settlements throughout the

11  country.  *See* www.rgrdlaw.com.  And by the time settlement discussions began, Lead Counsel

12  had a firm understanding of the strengths and weaknesses of the claims, both factually and legally.

13  *Supra*, §I-II.  "There is nothing to counter the presumption that Lead Counsel's recommendation

14  is reasonable."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

15         In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.

16  Given the litigation risks involved, the complexity of the underlying issues and the skill of defense

17  counsel, the $141 million recovery is significant.  It could not have been achieved without the full

18  commitment by Lead Plaintiff and its counsel.  The Settlement is fair, adequate, and reasonable,

19  and such that notice should be sent to the Class.

20  **V.**     **CERTIFICATION OF THE CLASS FOR PURPOSES OF THE
     SETTLEMENT IS APPROPRIATE**

21

22         Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to

23  certification of the following Class: "all Persons that purchased or acquired McKesson common

24  stock between October 24, 2013 and October 27, 2016, inclusive."  Stipulation, ¶1.4.  The Class

     is the same that is alleged in the Amended Complaint.  *See* Amended Complaint at ¶1.

25         At this stage, the Court should determine whether it "will likely be able" to grant

26  certification to the proposed Class at final approval.  Fed. R. Civ. P. 23(e)(1)(B).  In this case, the

27  Court has already certified the Class.  At the time Lead Plaintiff sought class certification, it moved

28

1  to certify the Class from October 24, 2013 through November 3, 2016.  ECF 159.  "The Court

2  grant[ed] the motion for class certification in full."  *Id.*  For the reasons explained in Lead

3  Plaintiff's Class Certification Motion (ECF 133), the Class – which is seven days shorter than the

4  class period that was originally certified – satisfies the requirements of Rules 23(a) and (b)(3).  *See*

5  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1250 (C.D. Cal. 2016) (granting final approval

6  and noting the court had preliminarily approved an "expanded . . . definition of the class from that

7  previously certified").

8  **VI.  THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO**
   **THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23,**
9  **THE PSLRA, AND DUE PROCESS**

10       Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable

11  under the circumstances, including individual notice to all members who can be identified through

12  reasonable effort."  *See also* Fed. R. Civ. P. 23(e)(1).  Courts evaluating proposed notice

13  documents have held that "[n]otice is satisfactory if it 'generally describes the terms of the

14  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

15  forward and be heard.'"  *Rodriguez*, 563 F.3d at 962.

16       Here, the Settling Parties propose to send, by first class mail, postage prepaid, individual

17  copies of the Postcard Notice to all potential Class Members who can reasonably be identified and

18  located.  Crudo Decl., ¶¶6-7; Preliminary Approval Order, ¶10.  Courts routinely allow notice by

19  postcard.  *See, e.g.*, *Kui Zhu v. Taronis Techs. Inc.*, 2020 WL 6868906, at *7 (D. Ariz. Nov. 23,

20  2020) (granting preliminary approval that provided for postcard notice); *Baker v. Seaworld Ent.,*

21  *Inc.*, 2020 WL 818893, at *2 (S.D. Cal. Feb. 19, 2020) (same).  In addition, the Summary Notice

22  will be published in *The Wall Street Journal* and over a national newswire service.  Preliminary

23  Approval Order, ¶11.  The proposed methods of providing notice satisfy the requirements of Rule

24  23, the PSLRA, and due process.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974);

25  *MGM Mirage*, 708 F. App'x at 896.

26       The proposed Notice provides detailed information in plain English.  The proposed Notice

27  describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and

28  status of the Action; (2) the definition of the Class and who is excluded; (3) the reasons the parties

have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the plan for allocating the Settlement proceeds to the Class; and (10) the date, time, and place of the Final Approval Hearing.  The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Also, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies this requirement, as it notifies Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and litigation expenses not to exceed $1.5 million, to be paid from the Settlement Fund.

In sum, the notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, the Court should also approve the proposed form and method of giving notice to the Class.

## VII.   NORTHERN DISTRICT OF CALIFORNIA *PROCEDURAL GUIDANCE*

The *Procedural Guidance* for class action settlements has been satisfied and weighs in favor of approving the Settlement.  *See* Appendix A.

## VIII.   CONCLUSION

For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, which will: (a) preliminarily approve the Settlement; (b) preliminarily certify the Class for settlement purposes; (c) approve the  form and manner of providing notice of pendency and Settlement to the Class; and (d) set a Final Approval Hearing date to consider final approval of the Settlement and related matters.

1    DATED:  November 30, 2022                    Respectfully submitted,

2                                                 ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
3                                                 SPENCER A. BURKHOLZ
                                                  LUKE O. BROOKS
4                                                 ELLEN GUSIKOFF STEWART
                                                  CHRISTOPHER D. STEWART
5                                                 JEFFREY J. STEIN
                                                  ANDREW W. HUTTON
6                                                 ERIKA OLIVER
                                                  NATALIE F. LAKOSIL
7

8                                                         s/ Luke O. Brooks
9                                                     LUKE O. BROOKS

10                                                655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
11                                                Telephone:  619/231-1058
                                                  619/231-7423 (fax)
12
                                                  ROBBINS GELLER RUDMAN
13                                                  & DOWD LLP
                                                  SHAWN A. WILLIAMS
14                                                Post Montgomery Center
                                                  One Montgomery Street, Suite 1800
15                                                San Francisco, CA  94104
                                                  Telephone:  415/288-4545
16                                                415/288-4534 (fax)

17                                                Lead Counsel for Lead Plaintiff

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**
**(Compliance with *Procedural Guidance* of Northern District of California)**

A.      **Guidance 1: Information about the Settlement**

1.      **Guidance 1(a):** *Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.*

As explained in §II of the attached supporting memorandum ("Preliminary Approval Memorandum"), the Court initially certified a class period of October 24, 2013 through November 3, 2016, inclusive (shortened in the MTD Order from the originally-pled period of October 24, 2013 through January 25, 2017, inclusive), which was later further shortened to a period of October 24, 2013 through January 11, 2016, inclusive, when the Court granted Defendants' motion for partial summary judgment as to the November 3, 2016 corrective disclosure. ECFs 159, 212 at 10. Thereafter, Lead Plaintiff filed the Amended Complaint, which sought to add one corrective disclosure, reinstate a previously-dismissed corrective disclosure, and extend the Class Period to October 24, 2013 through October 27, 2016, inclusive. ECF 223-1. The Amended Complaint is the most recent complaint on file; therefore, certifying the Class Period contained therein for settlement purposes is appropriate. *See J.C. Penney Corp.*, 211 F. Supp. 3d at 1250 (granting final approval and noting the court had preliminarily approved an "expanded . . . definition of the class from that previously certified").

2.      **Guidance 1(b):** *Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.*

The claims being released closely track the claims alleged. The Amended Complaint alleges federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of McKesson common stock during the Class Period. The definition of "Released Claims" is properly limited to claims that "***both*** (i) arise out of, are based upon, or are related in any way to the allegations, acts, facts, matters, occurrences, disclosures, filings, statements, representations, or omissions that were or could have been alleged by Lead Plaintiff and all other Class Members in the Action . . . , ***and*** (ii) relate to the purchase or

1  acquisition of McKesson common stock during the Class Period."   Stipulation, ¶1.24.

2  Accordingly, the release is carefully tailored to the claims alleged.  This release is substantially

3  similar to that included in *Volkswagen I*, 2018 WL 6198311, at *3.

4          **3.**        **Guidance 1(c): *The class recovery under the settlement***

5                          ***(including details about and the value of injunctive relief), the***

6                          ***potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.***

7          The Class will receive $141 million in cash, less approved fees and expenses, through the

8  Settlement.  As set forth in the Preliminary Approval Memorandum, had Lead Plaintiff fully

9  prevailed on its claims, estimated reasonably recoverable damages at trial, consistent with the

10  methodology in the Plan of Allocation, would have been approximately $702.1 million for the one

11  corrective disclosure that remained following the Court's MTD Order (which dismissed two of the

12  four originally-pled corrective disclosures, as explained in the Court's clarification order) and MSJ

13  Order (which dismissed a third disclosure).  If the Court were to accept one or both of the corrective

14  disclosures the Amended Complaint seeks to add, the estimated reasonably recoverable damages

15  at trial recovery would have been higher.  There are many factors that contributed to Lead

16  Plaintiff's acceptance of a discount to that damages value, which are more fully explained in

17  §IV.C.1 of the Preliminary Approval Memorandum.

18          **4.**        **Guidance 1(d): *Any other cases that will be affected by the***

19  ***settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in***

20  ***those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief***

21  ***history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement***

22  ***negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the***

23  ***significance of those factors on settlement approval.  If there are no such cases, counsel should so state.***

24          Counsel believes there are no other cases that will be affected by the Settlement.

25          **5.**        **Guidance 1(e): *The proposed allocation plan for the settlement fund.***

26          The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed

27  Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 8-13).

28

1
          **6.**         **Guidance 1(f):** *If there is a claim form, an estimate of the*

2
*expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable*

3
*settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.*

4
      This is a non-reversionary settlement in which the entire Settlement Fund will be paid out.

5
Stipulation, ¶5.9.  Once the Settlement becomes final, nothing is returned to Defendants.  With

6
respect to the number of class members, as well as their identities, these are unknown in securities

7
cases.  *See Vataj*, 2021 WL 1550478, at *11 ("The Court understands that the majority of class

8
members are likely beneficial purchasers whose securities were purchased by brokerage firms,

9
banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the

10
beneficial purchaser.").  Because the number and identity of class members is unknown, both the

11
number and percentage of class members expected to file claims is unknown.  Indeed, the number

12
of claims varies widely from case to case as does the size of each claim.  In a securities class action

13
settlement, class member participation is determined by the number of damaged shares (shares

14
affected by the inflation caused by the alleged misrepresentations and omissions) represented by

15
the claims submitted.  This more accurately reflects how much of the Class is seeking to participate

16
in the Settlement.  Consistent with its experience in securities class actions, and based on the

17
effectiveness of the proposed Notice Plan, Lead Counsel anticipates that the vast majority of

18
damaged shares will be represented by the claims submitted in this Action.

19
          **7.**         **Guidance 1(g):** *In light of Ninth Circuit case law disfavoring*

20
*reversions, whether and under what circumstances money originally designated for class recovery will revert to any*

21
*defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is*

22
*appropriate.*

23
      The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶5.9.

24

25

26

27

28

1

   **B.**     **Guidance 2: Settlement Administration**

2

          **a.**     **Guidance 2(a):** *Identify the proposed settlement administrator, the settlement administrator selection*

3

   *process, how many settlement administrators submitted proposals, what methods of notice and claims payment*

4

   *were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the*

5

   *last two years.*

6

   Lead Plaintiff's request to appoint Gilardi to serve as the Settlement Administrator,

7

including the reasons for Lead Counsel's selection of Gilardi, is addressed in §III of the

8

Preliminary Approval Memorandum.  Lead Counsel states that Gilardi and affiliated entities have

9

been appointed as the notice or claims administrator in 41 matters where Robbins Geller was lead

10

or co-lead counsel in the past two years.  Crudo Decl., ¶5.  The proposed methods of notice are

11

addressed in §IV.C.2 of the Preliminary Approval Memorandum.

12

          **b.**     **Guidance 2(b):** *Address the settlement administrator's procedures for securely handling class member data*

13

   *(including technical, administrative, and physical controls; retention; destruction; audits; crisis response;*

14

   *etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of*

15

   *errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of*

16

   *the settlement, and who will pay the costs.*

17

   Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which

18

is reviewed on an annual basis and communicated to all employees through a comprehensive

19

training program.  Crudo Decl., ¶30.  Gilardi maintains a number of corporate governance policies

20

that reflect the manner in which it does business, including an employee Code of Conduct that

21

outlines the professional, responsible, and ethical guidelines that govern employee conduct.  These

22

policies are available on Computershare's website.  *Id.*, ¶31.

23

   **C.**     **Guidance 3: The Proposed Notices to the Class Are Adequate**

24

   As set forth in §IV.C.2 of the Preliminary Approval Memorandum, Lead Counsel believes

25

that both the form of notice, which incorporates the suggested language from the *Procedural*

26

*Guidance* (Stipulation, Ex. A-1 at 19), and the plan for disseminating the notice, satisfy Rule 23,

27

the PSLRA, and due process.

28

1

### D.      Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement.  The proposed Notice includes information on a Class Member's right to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator.  *See* Stipulation, Ex. A-1 at 15-18.  With respect to exclusion requests, the Notice requires only the information needed to opt out – the shares purchased, acquired, or sold during the Class Period and the price of the shares at each event.  The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court.  Finally, the Notice incorporates the suggested language regarding objections from the *Procedural Guidance*.  *Id.* at 17-18.

### E.      Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3 of the Preliminary Approval Memorandum.

### F.      Guidance 7: Service Awards

Lead Plaintiff will not seek any service awards.

### G.      Guidance 8: *Cy Pres* Awardees

The Settling Parties have chosen the Investor Protection Trust as the designated recipient for any *de minimis* balance remaining after all reallocations are completed.  *See* Stipulation, ¶5.9. This is the same recipient the Court preliminarily approved in *Volkswagen I*, 2018 WL 6198311, at *2, *5.

### H.      Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Final Approval Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Postcard Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 20 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶11) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶¶17, 19) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶14) |
| Date for the Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

## I.      Guidance 10: Class Action Fairness Act

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants are nevertheless coordinating compliance with 28 U.S.C. §1715 at their own cost.

## J.      Guidance 11: Comparable Outcomes

**HCA 11**

*Karsten Schuh v. HCA Holdings, Inc., et al.*
No. 3:11-cv-01033 (M.D. Tennessee, Nashville Division)

| | |
|---|---|
| Total Settlement Amount | $215,000,000.00 |
| Total Interest Income | $853,900.48 |
| Notice and Claim Packets Mailed/Remailed | 98,305 |
| Number of Packets Returned | 2,220 |
| Undeliverable/Unable to Forward | 2.273% |
| Total Claims Submitted | 87,071 |
| | 89.147% |

| | |
|---|---|
| Total Valid Claims | 31,528 |
| | 36.210% |
| Opt-Outs Received | 4 |
| | 0.004% |
| Objections Received | 1 |
| | 0.001% |
| Mean Recovery per Claimant | $4,728.91 |
| Median Recovery per Claimant | $49.65 |
| Largest Recovery per Claimant | $4,986,673.51 |
| Smallest Recovery per Claimant | $10.05 |
| Method of Notice | Direct Mail; Published in Investor's Business Daily and PR Newswire; DTC Legal Notice System |
| Number of Checks Not Cashed | 3,506 |
| Value of Checks Not Cashed and Included in Supplemental Distribution | $1,173,909.03 |
| Administrative Costs (including taxes, tax prep., etc.) | $684,847.39 |
| Attorney Costs | $2,016,508.52 |
| Expert Fees | $1,159,395.07 |
| Attorney Fees | $64,500,000.00 |
|     % of Settlement Amount | 30% |
|     Multiplier | 4.32 |
| Initial Distribution Date | 04/17/2017 |
| Residual Distribution Dates | 11/08/2017; 12/21/2021 |
| Cy Pres Distribution | $0.00 |
| Charity | N/A |
| Distribution Completed | 08/08/2022 |
| Total Amount Distributed | $148,541,045.97 |
| Percentage of Distribution Factor | 20.299% |
| Number of Payments | 33,746 |
| Method of Payments | Checks and Wires |
| Reverter to Defendants | $0.00 |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 30, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  lukeb@rgrdlaw.com

## Mailing Information for a Case 3:18-cv-06525-CRB Evanston Police Pension Fund v. McKesson Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Jaime Allyson Bartlett**
  jbartlett@sidley.com,sfefilingnotice@sidley.com,zalam@sidley.com,tberninzoni@sidley.com,jamie-bartlett-0904@ecf.pacerpro.com,enorwood@sidley.com,tmagana@sidley.com,zarine-alam-6203@ecf.pacerpro.com,sfdocket@sidley.com,dgiusti@sidley.com,rwechkin@sidley.com

- **Sara B. Brody**
  sbrody@sidley.com,ddelarocha@sidley.com,shemmendinger@sidley.com,sfdocket@sidley.com,therron@sidley.com,bgillig@sidley.com,sara-brody-9555@ecf.pacerpro.com

- **Luke O Brooks**
  lukeb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A. Burkholz**
  SpenceB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Winfield Hutton**
  dhutton@rgrdlaw.com

- **Natalie Francis Lakosil**
  NLakosil@rgrdlaw.com

- **Ryan Anthony Llorens**
  ryanl@rgrdlaw.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,kmccormack@rgrdlaw.com

- **Christopher Dennis Stewart**
  CStewart@rgrdlaw.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,eamonn.campbell@stblaw.com,andrew.marrero@stblaw.com,janie.franklin@stblaw.com,katerina.siefkas@stblaw.com,sblake@stblaw.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Robin Eve Wechkin**
  rwechkin@sidley.com,robin-wechkin-9585@ecf.pacerpro.com,sfefilingnotice@sidley.com,sfdocket@sidley.com,mhanhan@sidley.com,enorwood@sidley.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,7448332420@filings.docketbird.com,ManagingClerk@stblaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)