1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SPENCER A. BURKHOLZ (147029)
   ELLEN GUSIKOFF STEWART (144892)
3  LUKE O. BROOKS (212802)
   CHRISTOPHER D. STEWART (270448)
4  JEFFREY J. STEIN (265268)
   ANDREW W. HUTTON (172033)
5  ERIKA OLIVER (306614)
   655 West Broadway, Suite 1900
6  San Diego, CA  92101
   Telephone:  619/231-1058
7  619/231-7423 (fax)
   spenceb@rgrdlaw.com
8  elleng@rgrdlaw.com
   lukeb@rgrdlaw.com
9  cstewart@rgrdlaw.com
   jstein@rgrdlaw.com
10 dhutton@rgrdlaw.com
   eoliver@rgrdlaw.com
11
   Lead Counsel for Lead Plaintiff
12
   [Additional counsel appear on signature page.]
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15

| | |
|---|---|
| EVANSTON POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| MCKESSON CORPORATION, et al., | ) ) ) |
| Defendants. | ) ) ) ) |

16 | Case No. 3:18-cv-06525-CRB

CLASS ACTION

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATE:     June 2, 2023
TIME:     10:00 a.m.
CTRM:     6, 17th Floor
JUDGE:    Honorable Charles R. Breyer

4883-9495-2799.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.  INTRODUCTION ............................................................................................1

II.  PROCEDURAL AND FACTUAL BACKGROUND.......................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENTS...........................................................................................4

    A.  Class Certification Remains Appropriate ...........................................4

    B.  The Settlement Warrants Final Approval ..........................................4

    C.  The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)..................6

        1.  Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately
            Represented the Class ........................................................................6

        2.  Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
            Arm's Length After Mediation with an Experienced Mediator..................7

        3.  Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
            Considering the Costs, Risk, and Delay of Trial and Appeal ....................7

            a.  The Costs and Risks of Trial and Appeal Support Approval
                of the Settlement ........................................................................8

            b.  The Proposed Settlement Eliminates the Additional Cost
                and Delay of Continued Litigation ................................................9

        4.  Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
            Is Effective ....................................................................................9

        5.  Rule 23(e)(2)(C)(iii): Attorneys' Fees ........................................................10

        6.  Rule 23(e)(2)(C)(iv): Other Agreements ....................................................10

        7.  Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
            Members Equitably........................................................................10

    D.  The Remaining Ninth Circuit Factors Are Satisfied............................................11

        1.  Discovery Completed and Stage of the Proceedings .................................11

        2.  Counsel Views this Good-Faith Settlement as Fair, Reasonable,
            and Adequate ................................................................................12

1

2                                                                              **Page**

3

4          3.      The Reaction of Class Members to the Settlement ...................................12

5          4.      The Settlement Amount ................................................................12

6          5.      The Risk of Maintaining Class Certification ...............................................13

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........................13

V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS ...............................................14

VI.    CONCLUSION.............................................................................................15

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
5
    951 F.3d 1106 (9th Cir. 2020) ....................................................................4

6

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..............................................6

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
8
    361 F.3d 566 (9th Cir. 2004) ..................................................................5, 7

9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..................................................................13

10

*Dura Pharms., Inc. v. Broudo*,
11
    544 U.S. 336 (2005) ....................................................................................8

12

*Fleming v. Impax Lab'ys.*,
13
    2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................8, 15

14

*Foster v. Adams & Assocs., Inc.*,
    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ........................................11, 12
15

*Hanlon v. Chrysler Corp.*,
16
    150 F.3d 1011 (9th Cir. 1998) ....................................................................5

17

*Hayes v. MagnaChip Semiconductor Corp.*,
18
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ..........................................15

19

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
20
    *aff'd sub nom. Hefler v. Pekoc*,
21
    802 F. App'x 285 (9th Cir. 2020) ................................................................7

22

*In re Capstone Turbine Corp. Sec. Litig.*,
    2020 WL 7889062 (C.D. Cal. Aug. 26, 2020)...........................................10

23

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
24
    2019 WL 2554232 (N.D. Cal. May 3, 2019)...............................................5

25

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ......................................................................6
26

*In re Mylan N.V. Sec. Litig.*,
27
    2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) ............................................8

28

Page

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................11

*In re Veritas Software Corp. Sec. Litig.*,
   496 F.3d 962 (9th Cir. 2007) .......................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. Jan. 23, 2017) ............................................................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) .........................................................................................4

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 4212811 (N.D. Cal. July 22, 2020),
   *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) .........................................................9

*Kastler v. Oh My Green, Inc.*,
   2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) .................................................................4

*Longo v. OSI Sys., Inc.*,
   2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022)..................................7, 10, 11

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)..................................................................14

*Mendoza v. Hyundai Motor Co.*,
   2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ...................................................................5

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................................5, 7

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) .................................................................8

*Rodriguez v. Nike Retail Servs., Inc.*,
   2022 WL 254349 (N.D. Cal. Jan. 27, 2022) .................................................................12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..............................................................................7, 12, 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..........................................................................................9

*Vataj v. Johnson*,
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ..............................................................13

|  | Page |
|---|---|

**STATUTES, RULES AND REGULATIONS**

15 U.S. C.
  §78j(b)................................................................................................................8

Federal Rules of Civil Procedure
  Rule 23...................................................................................................4, 14, 15
  Rule 23(c)(1)........................................................................................................13
  Rule 23(c)(2)(B)...................................................................................................14
  Rule 23(e).........................................................................................................1, 5
  Rule 23(e)(1)(B)...................................................................................................14
  Rule 23(e)(2)...................................................................................................5, 6, 7
  Rule 23(e)(2)(A)...................................................................................................6
  Rule 23(e)(2)(B)...................................................................................................7
  Rule 23(e)(2)(C)...................................................................................................7
  Rule 23(e)(2)(C)(i)................................................................................................7
  Rule 23(e)(2)(C)(ii)..............................................................................................9
  Rule 23(e)(2)(C)(iii)............................................................................................10
  Rule 23(e)(2)(C)(iv)............................................................................................10
  Rule 23(e)(2)(D)..................................................................................................10
  Rule 23(e)(3)........................................................................................................5

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, & Edward Flores,
  *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
  (NERA Jan. 24, 2023)...........................................................................................13

Laarni T. Bulan & Laura E. Simmons,
  *Securities Class Action Settlements: 2022 Review and Analysis*
  (Cornerstone Research 2023)...............................................................................13

1

**NOTICE OF MOTION AND MOTION**

2    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3         PLEASE TAKE NOTICE THAT at 10:00 a.m. on June 2, 2023, in the courtroom of the

4    Honorable Charles R. Breyer, at the United States District Court, Northern District of California, San

5    Francisco Courthouse, Courtroom 6 - 17th floor, 450 Golden Gate Avenue, San Francisco, CA

6    94102, Lead Plaintiff Pension Trust Fund for Operating Engineers ("Lead Plaintiff" or the "Fund")

7    will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e),

8    for entry of a judgment granting final approval of the proposed Settlement and entry of an order

9    granting approval of the proposed Plan of Allocation.

10        This Motion is based on the following Memorandum of Points and Authorities, as well as the

11   accompanying Declaration of Luke O. Brooks in Support of Motions for: (1) Final Approval of

12   Class Action Settlement; (2) Approval of Plan of Allocation; and (3) Award of Attorneys' Fees and

13   Expenses ("Brooks Declaration" or "Brooks Decl."), with attached exhibits, all prior pleadings and

14   papers in this Action, the arguments of counsel, and such additional information or argument as may

15   be required by the Court.

16        A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order

17   granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply

18   submission on May 26, 2023, after the May 12, 2023 deadline for Class Members to object to the

19   Settlement or Plan of Allocation has passed.

20

21

22

23

24

25

26

27

28

1
## STATEMENT OF ISSUES TO BE DECIDED

2
    1.      Whether the Court should grant final approval of the Settlement.

3
    2.      Whether the Court should approve the Plan of Allocation.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.      INTRODUCTION

3

      The $141,000,000, all-cash Settlement, achieved only after years of hard-fought litigation, is

4

a tremendous result for the Class.[1]  It is multiples above the median percentage recovery for 2022

5

securities class action settlements and comes after more than four years of litigation that included

6

drafting and filing detailed consolidated complaints; partially successfully opposing Defendants'

7

motion to dismiss the Complaint and briefing its oppositions to Defendants' motions to dismiss the

8

Amended Complaint; obtaining and reviewing substantial document discovery from Defendants and

9

numerous third parties; obtaining class certification; opposing Defendants' motion for partial

10

summary judgment; and participating in protracted arm's-length settlement negotiations under the

11

supervision of Greg Danilow of Phillips ADR.  There is no question that as a result of these

12

extensive litigation and settlement efforts, Lead Plaintiff and Lead Counsel had a thorough

13

understanding of the relative strengths and weaknesses of the Class's claims and the propriety of

14

settlement.

15

      While Lead Counsel believes the Class's claims have significant merit, from the outset and

16

throughout the Action, Defendants adamantly denied liability and asserted they possessed absolute

17

defenses to the Class's claims.  Indeed, through its October 30, 2019 Order Denying Motion to

18

Dismiss (ECF 67) ("MTD Order") and October 21, 2021 Order Granting Motion for Partial

19

Summary Judgment (ECF 212) ("MSJ Order"), the Court dismissed all but one corrective disclosure,

20

highlighting the difficulty in pursuing Lead Plaintiff's claims.  During extensive settlement

21

negotiations, Lead Counsel made it clear that while it was prepared to fairly assess the strengths and

22

weaknesses of this case, it would continue to litigate rather than settle for less than fair value.  Lead

23

Plaintiff and its counsel persisted for several months following the mediation until Mr. Danilow

24

25

---

26

[1]     The terms of the Settlement are set forth in the Stipulation of Settlement dated November 30, 2022 (ECF 277) (the "Stipulation").  All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation and in Lead Plaintiff's Notice of Unopposed Motion and Unopposed Motion for Preliminary Approval of Proposed Settlement, and Memorandum of Points and Authorities in Support Thereof (ECF 275).

27

28

1  issued a mediator's proposal on September 21, 2022, and they achieved an amount they believe is

2  exceptional and in the Class's best interest.

3      Lead Counsel is experienced in prosecuting securities class actions and has concluded that

4  the Settlement, which recovers approximately 20% of the estimated reasonably recoverable damages

5  for the one corrective disclosure remaining following the Court's MTD and MSJ Orders, is an

6  excellent result based on all relevant factors.  Moreover, Lead Plaintiff – the type of institutional

7  investor Congress envisioned serving in that role when passing the Private Securities Litigation

8  Reform Act of 1995 ("PSLRA") – fully supports the Settlement.  As does the Class.  Notice was

9  provided to potential Class Members pursuant to the Order Preliminarily Approving Settlement and

10  Providing for Notice, ECF 281 (the "Preliminary Approval Order").  *See* Declaration of Ross D.

11  Murray Regarding (A) Notice Dissemination; (B) Publication/Transmission; and (C) Requests for

12  Exclusion Received to Date ("Murray Decl."), ¶¶4-13, attached as Ex. B to the Brooks Declaration.

13  While the May 12, 2023 deadline to object to the Settlement and Plan of Allocation has not yet

14  passed, to date no objections have been received.[2]

15      Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which

16  was detailed in the Notice provided to Class Members.  The Plan of Allocation governs how claims

17  will be calculated and how settlement proceeds will be distributed among Authorized Claimants.

18  The Plan of Allocation is based on the analysis of Lead Plaintiff's damages consultant and subjects

19  all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference

20  between what Class Members paid for their McKesson common stock during the Class Period and

21  what they would have paid had the alleged misstatements and omissions not been made.

22      In short, the $141,000,000 Settlement and the Plan of Allocation to distribute it are fair and

23  reasonable, and the Settlement itself is an excellent result for the Class.  Lead Plaintiff and Lead

24  Counsel strongly support its approval by the Court.

25

26

27

28

---

[2]    Lead Counsel will address any timely objections in its reply brief, which is due on May 26, 2023.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

The initial complaint was filed on October 25, 2018.  ECF 1.  On February 8, 2019, the Court appointed the Fund as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") as lead counsel.  ECF 40.  Lead Plaintiff filed the Complaint on April 9, 2019, asserting securities claims under the Securities Exchange Act of 1934.  ECF 43.

On June 10, 2019, Defendants moved to dismiss the Complaint, which Lead Plaintiff opposed.  ECF 49, 53.  Following oral argument, on October 30, 2019, the Court denied in part and granted in part Defendants' motion.  ECF 62, 67.  Defendants requested leave to move for reconsideration of the MTD Order on December 6, 2019, which Lead Plaintiff opposed.  ECF 70, 71.  On December 19, 2019, the Court denied Defendants' request for leave and clarified that two of the four alleged corrective disclosures were inadequately pled, leaving two alleged corrective disclosures of January 11, 2016 and November 3, 2016.  ECF 72.

The parties engaged in extensive discovery, including litigating multiple disputes.  Brooks Decl., ¶¶23-30.  In total, Lead Plaintiff obtained and reviewed over 1.7 million documents that were produced by Defendants and more than 30 third parties.

On November 16, 2020, Lead Plaintiff moved to certify the Class, which Defendants opposed.  ECF 133, 139.  On April 8, 2021, the Court heard oral argument, granted Lead Plaintiff's motion for a class period of October 24, 2013 through November 3, 2016, and permitted Defendants to file a motion for partial summary judgment on loss causation grounds with respect to the November 3, 2016 corrective disclosure.  ECF 157, 159.  Defendants moved for partial summary judgment on June 7, 2021, which Lead Plaintiff opposed.  ECF 166, 177.  On October 21, 2021, the Court heard oral argument and granted the motion, shortening the class period to October 24, 2013 through January 11, 2016.  ECF 209, 212.  Thereafter, on December 29, 2021, Lead Plaintiff filed the Amended Complaint, which alleges a Class Period of October 24, 2013 through October 27, 2016.  *See* ECF 223-1.  On February 14, 2022, Defendants moved to dismiss the Amended Complaint, which Lead Plaintiff opposed.  ECF 237, 240, 245, 257.

On May 6, 2022, the parties, their counsel, and representatives of the insurance carriers for the applicable D&O insurance policies attended an all-day mediation with Mr. Danilow.  Prior to the

1  mediation, the parties submitted and exchanged mediation statements.  While that mediation brought

2  the parties closer to a resolution, the Action remained unresolved at that time.  The parties continued

3  their mediation efforts with the assistance of Mr. Danilow while simultaneously preparing for the

4  hearing on Defendants' motions to dismiss.  On September 21, 2022, Mr. Danilow issued a

5  mediator's proposal to settle the Action for $141,000,000, which the Settling Parties accepted.

6        On November 30, 2022, Lead Plaintiff moved to preliminarily approve the Settlement.  ECF

7  275.  The Court heard oral argument and granted Lead Plaintiff's motion on January 20, 2023.  ECF

8  280, 281.  The Court certified the Class, for settlement purposes, which includes a Class Period from

9  October 24, 2013 through October 27, 2016.  ECF 281, ¶¶4-6.

10  ### III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

11

12       #### A.    Class Certification Remains Appropriate

13        Nothing has changed since preliminary approval that would undermine the Court's

14  certification of the Class.  "'Because the Settlement Class has not changed, the Court sees no reason

15  to revisit the analysis of Rule 23.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*

16  *Liab. Litig.*, 229 F. Supp. 3d 1052, 1062-63 (N.D. Cal. Jan. 23, 2017).[3]

17       #### B.    The Settlement Warrants Final Approval

18        The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

19  where complex class action litigation is concerned.'"  *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

20  1121 (9th Cir. 2020).  "Deciding whether a settlement is fair is . . . best left to the district judge."

21  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611

22  (9th Cir. 2018).  Courts, however, should not convert settlement approval into an inquiry into the

23  merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated

24  between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

25  that the agreement is not the product of fraud or overreaching by, or collusion between, the

26  negotiating parties.'"  *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19,

27

28  [3]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

1   2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

2   (9th Cir. 1982)).

3          Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims

4   brought as a class action and provides "the court may approve [a proposed settlement] only after a

5   hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To

6   determine whether a settlement is "fair, reasonable, and adequate," the Court must

7          consider[] whether: (A) the class representatives and class counsel have adequately
           represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
8          provided for the class is adequate, taking into account: (i) the costs, risks, and delay
           of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief
9          to the class, including the method of processing class-member claims; (iii) the terms
           of any proposed award of attorney's fees, including timing of payment; (iv) and any
10         agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
           class members equitably relative to each other.

11  *Id.*

12         In addition to the Rule 23(e) considerations, courts in the Ninth Circuit consider the

13  following factors when examining whether a proposed settlement comports with Rule 23(e)(2):

14         "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
           duration of further litigation; (3) the risk of maintaining class action status
15         throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
           completed and the stage of the proceedings; (6) the experience and views of counsel;
16         (7) the presence of a governmental participant; and (8) the reaction of the class
           members to the proposed settlement."[4]
17

18  *Mendoza*, 2017 WL 342059, at *4 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575

19  (9th Cir. 2004)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *overruled*

20  *on other grounds as recognized in Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020).

21         The Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors when

22  assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further

23  consideration at the Final Approval Hearing.  *See* ECF 281.  The Court's conclusion on preliminary

24  approval is equally true now, as nothing has changed between January 20, 2023 and the present.  *See*

25  *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232,

26

27  ─────────────
    [4]   "Because there is no governmental entity involved in this litigation, this [seventh] factor is
28  inapplicable."  *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

1    at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and

2    counsel equally in favor of final approval now.").

3        **C.      The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

4            **1.      Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have
                       Adequately Represented the Class**

5

6            Lead Plaintiff and Lead Counsel have more than adequately represented the Class as required

7    by Rule 23(e)(2)(A).  Lead Counsel is highly qualified and experienced in securities litigation, *see*

8    Brooks Decl., ¶68, actively pursued the claims of McKesson investors in this Court, and zealously

9    advocated for the Class's best interests throughout the litigation.  *See generally* Declaration of Dan

10   Reding and James E. Murray in Support of Final Approval of Lead Plaintiff's Proposed Class Action

11   Settlement ("Fund Decl."), attached as Ex. A to the Brooks Declaration; *Cheng Jiangchen v.*

12   *Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where

13   lead counsel "has significant experience in securities class action lawsuits").   The excellent

14   Settlement negotiated on the Class's behalf is the result of the diligent prosecution of this Action for

15   more than four years.  *See, e.g., Id.* (finding this factor satisfied where lead counsel vigorously

16   pursued plaintiff's claims through multiple rounds of motions to dismiss and amended complaints).

17   In addition, Lead Plaintiff and its Counsel have no interests antagonistic to those of other Class

18   Members; rather, they share the common interest in obtaining the largest possible recovery from

19   Defendants for Lead Plaintiff's and the Class's claims that "arise from the same alleged conduct: the

20   purchase of [McKesson] stock at inflated prices based on Defendants' alleged . . . misstatements."

21   *Id.*; *see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine

22   legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any

23   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

24   prosecute the action vigorously on behalf of the class?'").   This factor weighs in favor of final

25   approval.

26

27

28

2.       **Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator**

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The parties here reached the Settlement only after a formal mediation session and several weeks of additional negotiations overseen by Mr. Danilow. *See* Brooks Decl., ¶¶38-40. Mediation efforts did not begin until Defendants' motion to dismiss the Complaint was decided, extensive document discovery was undertaken, class certification was granted, Defendants' motion for partial summary judgment was litigated, and the Amended Complaint and briefing on Defendants' motions to dismiss it were filed. Given the efforts of the parties over the last four years, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

3.       **Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal**

Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P. 23(e)(2); *Churchill*, 361 F.3d at 575. While Lead Plaintiff believes its claims have merit and that the Class would prevail on Defendants' motions to dismiss and any further summary judgment motion, it nevertheless recognizes the numerous risks and uncertainties in proceeding to trial. In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As discussed below, the benefits conferred on Class Members by the Settlement outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

#### a.   The Costs and Risks of Trial and Appeal Support Approval of the Settlement

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants were responsible for materially false and misleading statements. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action. *See* Brooks Decl., ¶¶42-47. Although Lead Plaintiff is confident in the abilities of Lead Counsel to prove the case, the risk of loss was still real. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'").

Defendants advanced several plausible arguments disputing both liability and damages. For example, Defendants repeatedly argued throughout the litigation that "[t]o establish the element of falsity, Plaintiff ***must*** prove the conspiracy(ies) upon which its securities fraud claims are based," including proving conspiratorial conduct on a drug-by-drug basis. ECF 173 at 1 n.1; *see, e.g.*, Brooks Decl., ¶¶45-46. The need to prove an antitrust "'case within a case'" to establish the falsity of Defendants' public statements related to generic drug manufacturers' alleged anticompetitive conduct greatly amplified Lead Plaintiff's litigation risks. *See Fleming v. Impax Lab'ys.*, 2022 WL 2789496, at *5-*6 (N.D. Cal. July 15, 2022) (granting final approval of securities fraud class action settlement where "the difficulty of needing to prove a 'case within a case' . . . to establish liability" existed). Lead Counsel anticipates that Defendants would have continued to take this position at summary judgment and trial. If the Court agreed with Defendants, this could present a substantial hurdle to any recovery. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552, at *27-*34 (S.D.N.Y. Mar. 30, 2023) (granting summary judgment and dismissing securities fraud claims premised on "fraudulent statements explaining [manufacturer's] market share and its income in the generic drugs market" for, *inter alia*, failing to establish underlying violations of the Sherman Act "on a drug-by-drug basis").

1
2

**b.     The Proposed Settlement Eliminates the Additional
Cost and Delay of Continued Litigation**

3

There remained much work to be done in this Action.  For instance, if the Settlement was not

4

reached, the Court would rule on Defendants' motions to dismiss the Amended Complaint.

5

Assuming the action survived that ruling, the parties would be faced with taking and/or defending up

6

to 60 fact depositions (*see* Brooks Decl., ¶36), exchanging expert reports and conducting expert

7

discovery, briefing summary judgment and evidentiary pretrial motions, trying the case before a

8

jury, and litigating the inevitable appeals.  Each of these steps is both complex and expensive, and

9

the case likely would not be resolved until several years down the road.  *See, e.g., Hsu v. Puma*

10

*Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting

11

final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in

12

plaintiff's favor following trial).

13

"By contrast, the Settlement provides . . . timely and certain recovery."  *In re Yahoo! Inc.*

14

*Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022

15

WL 2304236 (9th Cir. June 27, 2022).  The Settlement at this juncture results in an immediate,

16

substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case"

17

– key factors in evaluating the reasonableness of a settlement.  *Torrisi v. Tucson Elec. Power Co.*, 8

18

F.3d 1370, 1376 (9th Cir. 1993).  The Settlement is a far better option for the Class.

19

**4.     Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing
Relief Is Effective**

20

Lead Plaintiff and Lead Counsel have also taken substantial efforts to notify the Class about

21

the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order,

22

more than 506,200 Postcard Notices were mailed (and over 260 copies of the Notice and Proof of

23

Claim) to potential Class Members and nominees; the Summary Notice was published in *The Wall*

24

*Street Journal* and transmitted over *Business Wire*; and the website created for this Action contains

25

key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

26

*See generally* Murray Decl.

27
28

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.  The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[5]

### 5.     Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's Memorandum in Support of an Award of Attorneys' Fees and Expenses ("Fee Brief"), submitted herewith, Lead Counsel seeks a benchmark attorneys' fee of 25% of the Settlement Amount and expenses of $1,027,452.95, plus interest on both amounts.  This fee request was fully disclosed in the Notice (Murray Decl., Ex. C, Notice at ¶5), approved by Lead Plaintiff (Fund Decl., ¶4), and is consistent with awards in securities and other class action settlements.  *See* Fee Brief, §III.B.

### 6.     Rule 23(e)(2)(C)(iv): Other Agreements

As discussed in Lead Plaintiff's preliminary approval brief (ECF 275 at 11) and in the Stipulation (¶7.3), Defendants and Lead Plaintiff have entered into a standard supplemental agreement which provides that if opt outs from the Class equals or exceeds a certain threshold, Defendants shall have the option to terminate the Settlement.  Such agreements are common and do not undermine the propriety of the Settlement.  *Longo*, 2022 U.S. Dist. LEXIS 158606, at *17.

### 7.     Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of

---

[5]    Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation.  *See* Stipulation, ¶5.4.  These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*, ¶5.9.  In the case that there are any *de minimis* residual funds that are not feasible or economic to reallocate, Lead Plaintiff proposes that such funds be donated to the Investor Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection.  *See, e.g.*, *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020).

1    Allocation "'is governed by the same standards of review applicable to approval of the settlement as

2    a whole: the plan must be fair, reasonable and adequate.'" *In re Omnivision Techs., Inc.*, 559 F.

3    Supp. 2d 1036, 1045 (N.D. Cal. 2008). The Plan of Allocation details how the settlement proceeds

4    will be distributed among Authorized Claimants and provides formulas for calculating the

5    recognized claim of each Class Member based on each such Person's purchases or acquisitions of

6    McKesson common stock during the Class Period and if or when they sold. It is fair, reasonable,

7    and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the

8    same formulas for distribution of the Settlement and each Authorized Claimant will receive a *pro*

9    *rata* distribution pursuant to the Plan of Allocation. *See, e.g.*, *Longo*, 2022 U.S. Dist. LEXIS

10   158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be

11   based on when the claimant acquired and sold the subject securities. Accordingly, this factor also

12   weighs in favor of final approval.").

13            **D.        The Remaining Ninth Circuit Factors Are Satisfied**

14                    **1.        Discovery Completed and Stage of the Proceedings**

15            The parties reached the Settlement after extensive briefing on Defendants' multiple motions

16   to dismiss and for partial summary judgment, briefing on Lead Plaintiff's motion for class

17   certification, and the production and review of over 1.7 million documents. Brooks Decl., ¶¶6, 29.

18   That discovery provided significant insight into the strengths and challenges of the case, and the

19   parties had a thorough understanding of the arguments, evidence, and potential witnesses that would

20   inform summary judgment and the trial. *See id.*, ¶¶6-7. There can be no question that Lead Plaintiff

21   and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by

22   the time it was reached. *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal.

23   Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient information about the case' to

24   broker a fair settlement" given extensive discovery, years of litigation, and multiple settlement

25   conferences). This factor strongly weighs in favor of final approval of the Settlement.

26

27

28

1
2

### 2.    Counsel Views this Good-Faith Settlement as Fair, Reasonable, and Adequate

3

The Ninth Circuit recognizes that parties "'represented by competent counsel are better

4

positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

5

litigation.'"  *Rodriguez*, 563 F.3d at 967.  Thus, courts grant great weight to the recommendations

6

and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at

7

*4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the

8

settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of

9

th[e] case and their extensive experience litigating prior . . . class actions cases").

10

Lead Counsel have extensive experience representing plaintiffs in securities and other

11

complex class action litigation and have negotiated numerous substantial class action settlements

12

across the country.  Brooks Decl., ¶68.  As a result of this experience, and with the assistance of

13

sophisticated consultants and experts when appropriate, Lead Counsel possessed a firm

14

understanding of the strengths and weaknesses of the claims by the time the Settlement was reached.

15

Lead Counsel concluded that the Settlement is an outstanding result for the Class.

16

### 3.    The Reaction of Class Members to the Settlement

17

While the deadline to object to any aspect of the Settlement is May 12, 2023, to date, no

18

objections have been received.[6]  Lead Plaintiff will address any objections, if any, in its reply papers.

19

Further, only six Class Members have opted out of the Class, who collectively represent only

20

191.164 shares.[7]  The Class's reaction to the Settlement supports approving it.  *See Foster*, 2022 WL

21

425559, at *6 ("'[The] Court may appropriately infer that a class action settlement is fair, adequate,

22

and reasonable when few class members object to it.'").

23

### 4.    The Settlement Amount

24

The $141,000,000 Settlement is an excellent result for the Class.  This recovery far exceeds

25

the median securities settlement both on a dollar amount and as a percentage of estimated damages.

26

---

[6]    To date, of the 506,203 mailed Postcard Notices, 2,284 were undeliverable.  Updated addresses were located, and an additional 539 Postcard Notices were re-mailed.  *See* Murray Decl., ¶10 n 2.

27

[7]    One Class Member did not list its shares in its request for exclusion.

28

1   As noted previously, it represents approximately 20% of the estimated reasonably recoverable

2   damages for the one corrective disclosure remaining following the Court's MTD and MSJ Orders.

3   This recovery is 11 times the median percentage recovery for cases settled with estimated damages

4   of between $500 and $999 million in 2022, and exceeds the median recovery of similar cases settled

5   between 2013 and 2022.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action*

6   *Settlements: 2022 Review and Analysis* (Cornerstone Research 2023) ("Cornerstone Report" or

7   "Cornerstone Rpt.") at 5-6; Janeen McIntosh, Svetlana Starykh, & Edward Flores, *Recent Trends in*

8   *Securities Class Action Litigation: 2022 Full-Year Review*, at 15, Fig. 17 (NERA Jan. 24, 2023)

9   ("NERA Report" or "NERA Rpt."), attached as Exs. C and D, respectively, to the Brooks

10  Declaration.  This recovery also exceeds the median settlement as a percentage of estimated damages

11  in the Ninth Circuit from 2013 through 2022 – 4.6%.  *See* Cornerstone Rpt. at 19.

12                  **5.      The Risk of Maintaining Class Certification**

13          Although Defendants did not oppose class certification for settlement purposes, they may

14  later have moved to decertify the Class or seek to shorten the Class Period (as they previously did

15  when they successfully moved for partial summary judgment).  Rule 23(c)(1) provides that a class

16  certification order may be altered or amended at any time before a decision on the merits.  This

17  factors weighs in favor of approval.

18                                  *       *       *

19          In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that

20  the Settlement is fair, reasonable, and adequate, and should grant final approval.

21  **IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

22          In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of

23  the Plan of Allocation that the Court preliminarily approved on January 20, 2023.  ECF 281.  The

24  Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless

25  governed by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v.*

26  *City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478,

27  at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a

28  reasonable, rational basis, particularly if recommended by experienced and competent counsel.'")

1   (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate

2   the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable

3   Proof of Claim and who have a recognized loss under the Plan of Allocation).  Individual claimants'

4   recoveries will depend upon when they bought McKesson stock during the Class Period and whether

5   and when they sold their shares.  Authorized Claimants will recover their proportional "*pro rata*"

6   amount of the Net Settlement Fund.  This is the traditional and reasonable approach to allocating

7   securities settlements.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec.

8   6, 2018) ("'A plan of allocation that reimburses class members based on the extent of their injuries is

9   generally reasonable.'").  No objections to the Plan of Allocation have been filed.  As a result, the

10  Plan of Allocation is fair and reasonable and should be approved.

11  **V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS**

12          A district court "must direct notice in a reasonable manner to all class members who would

13  be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

14  notice that is practicable under the circumstances, including individual notice to all members who

15  can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

16  describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

17  investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962.  The PSLRA further

18  requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow

19  class members to evaluate a proposed settlement."  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d

20  962, 969 (9th Cir. 2007).

21          The substance of the Notice satisfies Rule 23 and due process.  The Claims Administrator has

22  disseminated over 506,200 copies of the Court-approved Postcard Notice to potential Class Members

23  and their nominees who could be identified with reasonable effort, from multiple sources.  *See*

24  Murray Decl., ¶¶5-11.  In addition, the Court-approved Summary Notice was published in *The Wall*

25  *Street Journal* and transmitted over *Business Wire*.  *Id.*, ¶13.  The Claims Administrator also

26  provided all information regarding the Settlement online through the Settlement website.  *Id.*, ¶15.

27  The Notice provides the necessary information for Class Members to make an informed decision

28  regarding the proposed Settlement, as required by the PSLRA.  The Notice further explains that the

1    Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely

2    Proofs of Claim under the Plan as described in the Notice.  The notice program here fairly apprises

3    Class Members of their rights with respect to the Settlement, is the best notice practicable under the

4    circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and

5    due process.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor*

6    *Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

7    **VI.    CONCLUSION**

8          Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class.  Lead

9    Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

10   DATED:  April 28, 2023                              Respectfully submitted,

11                                                       ROBBINS GELLER RUDMAN
                                                           & DOWD LLP
12                                                       SPENCER A. BURKHOLZ
                                                         ELLEN GUSIKOFF STEWART
13                                                       LUKE O. BROOKS
                                                         CHRISTOPHER D. STEWART
14                                                       JEFFREY J. STEIN
                                                         ANDREW W. HUTTON
15                                                       ERIKA OLIVER

16

17                                                            s/ Spencer A. Burkholz
                                                         ─────────────────────────
18                                                          SPENCER A. BURKHOLZ

19                                                       655 West Broadway, Suite 1900
                                                         San Diego, CA  92101
20                                                       Telephone:  619/231-1058
                                                         619/231-7423 (fax)

21                                                       ROBBINS GELLER RUDMAN
                                                           & DOWD LLP
22                                                       SHAWN A. WILLIAMS
                                                         Post Montgomery Center
23                                                       One Montgomery Street, Suite 1800
                                                         San Francisco, CA  94104
24                                                       Telephone:  415/288-4545
                                                         415/288-4534 (fax)

25
                                                         Lead Counsel for Lead Plaintiff
26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 28, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  spenceb@rgrdlaw.com

4883-9495-2799.v1

**Mailing Information for a Case 3:18-cv-06525-CRB Evanston Police Pension Fund v. McKesson Corporation et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Jaime Allyson Bartlett**
  jbartlett@sidley.com,sfefilingnotice@sidley.com,zalam@sidley.com,tberninzoni@sidley.com,jamie-bartlett-0904@ecf.pacerpro.com,enorwood@sidley.com,tmagana@sidley.com,zarine-alam-6203@ecf.pacerpro.com,sfdocket@sidley.com,dgiusti@sidley.com,rwechkin@sidley.com

- **Sara B. Brody**
  sbrody@sidley.com,ddelarocha@sidley.com,shemmendinger@sidley.com,sfdocket@sidley.com,therron@sidley.com,bgillig@sidley.com,sara-brody-9555@ecf.pacerpro.com

- **Luke O Brooks**
  lukeb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Spencer A. Burkholz**
  SpenceB@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonah Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Winfield Hutton**
  dhutton@rgrdlaw.com

- **Ryan Anthony Llorens**
  ryanl@rgrdlaw.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com,JStein@ecf.courtdrive.com,kmccormack@rgrdlaw.com

- **Christopher Dennis Stewart**
  CStewart@rgrdlaw.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,eamonn.campbell@stblaw.com,andrew.marrero@stblaw.com,janie.franklin@stblaw.com,katerina.siefkas@stblaw.com,sblake@stblaw.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Robin Eve Wechkin**
  rwechkin@sidley.com,robin-wechkin-9585@ecf.pacerpro.com,sfefilingnotice@sidley.com,sfdocket@sidley.com,mhanhan@sidley.com,enorwood@sidley.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,7448332420@filings.docketbird.com,ManagingClerk@stblaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)